IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 22-01676 (ESL)

ESJ TOWERS, INC.                                CHAPTER 11

          Debtor

OPINION AND ORDER

This case is before the court to determine whether debtor's counsel, attorney Charles A. Cuprill ("Cuprill"), has a conflict and/or materially adverse interest to the bankruptcy estate. The concern was raised by Mary Ida Townson, United States Trustee for Region 21 ("UST") (dkt. #68), stating that "[a]lthough at this early stage the United States Trustee has no reason to doubt that the professionals are adequately discharging their duties, the Court should be aware of possible conflicts of interest and order the professionals to provide more detailed disclosures." The concerns were also as to proposed special counsel, Luis Daniel Muñiz, Esq.; however, the court will only address in this order the allegations as to attorney Cuprill.

The court will address with specificity, including citations, the parties' allegations. As has been expressed before, the concerns raised by the UST are valid. Therefore, the explanations and disclosures to the concerns are critical.

        UST's Position and Concerns

The UST states that attorney Cuprill received his retainer from Around the World Holdings, LLC ("ATWH"), the Debtor may have accounts receivables from ATWH and possibly avoidance actions against this entity. ATWH is the holding company of Conexus, which in turn is the holding company of Debtor. The concerns were prompted when at the meeting of creditors Debtor's representatives testified that Debtor owed monies to ATWH pursuant to a management agreement between the parties. The schedules and statements then on file did not clearly disclose the above.

-1-

The application for employment filed by attorney Cuprill did not disclose that ATWH was both a creditor and a debtor to the Debtor. ATWH was also listed as a co-debtor on Schedule H with respect to certain creditors.

The UST also stated that "during the pandemic Debtor received $350,000 under the terms of an Economic Injury Disaster Loan ("EIDL") extended by the SBA. The documents provided to the United States Trustee reflect that Debtor paid $76,000 from the EIDL proceeds to ATWH, as "Advance on balance owed." Keith St. Clair, Debtor's president, received $50,000 as "professional services." Cesar Hernández Monagas, Debtor's secretary and treasurer, received $13,619 as "Travelclick reimbursement." These payments were made on (sic) December 2021, which would place them within the one-year period applicable to preferential payments to insiders."

"Lastly, in or around 2019, the Debtor transferred 124 apartments to 124 different LLCs, each named "[Apartment No.] Acquisition LLC" (the "Acquisition LLCs") Upon information and belief, the Acquisition LLCs are all directly or indirectly controlled by the principals of the Debtor and are related entities. At the meeting of creditors, Debtor's representatives testified that Debtor did not receive any consideration for the transfer of the apartments, except for the assignment of the secured debts that encumbered the same."

Based on the above relations between the Debtor and the named entities, "the Debtor and its bankruptcy professionals, in furtherance of their fiduciary duties to the estate, should scrutinize Debtor's transactions with the Acquisition LLCs to determine whether any avoidance actions may be pursued to recover the transferred apartments. Likewise, the professionals should evaluate whether to commence collection actions against ATWH and the related entities to recover on Debtor's accounts receivables and/or avoid the preferential payments." Therefore, "Mr. Cuprill should clarify the circumstances of the payment received by ATWH, including how ATWH obtained said funds, and whether said payment is linked to providing any favorable result to ATWH or any of Debtor's related entities (including its shareholders) vis a vis the Debtor and the other creditors."

-2-

Response by Attorney Cuprill

"The Cuprill Law Firm Application disclosed that on April 7, 2022, Charles A. Cuprill P.S.C. Law Offices (the "Cuprill Law Firm") received a $75,000.00 retainer from Around the World Holdings, LLC ("ATWH"), made on behalf of Debtor, and that as of May 14, 2022, $53,000.00 of the advance had not been consumed (Docket No. 23)."  ATWH is the holding company for Conexus Holdings Puerto Rico ("Conexus"), Debtor's parent company.

Cuprill answers that the Cuprill Law Firm had no knowledge of Debtor's, ATWH's or Conexus' existence or corporate structure, their principals and officers, prior to Debtor's inquiry as to Cuprill Law Firm's availability to act as Debtor's counsel. "He was contacted by Brian K. Tester, Esq. as to the Cuprill Law Firm's availability for a possible complex Chapter 11 case and Cuprill was provided with a chart of said corporate structure, as well as information regarding the nature of Debtor's business, financial condition and other matters." After "learning that neither ATWH or Conexus have any operations, that Debtor was the only entity with operations and the holder of property interests in ESJ Towers Condominium (the "Condominium"), of the effects of Hurricane María on the Condominium, Debtor's claim against Chubb Insurance Co. for the hurricane damages, the effects of the COVID-19 pandemic, Debtor's debt structure and its cash flow situation, Cuprill indicated the availability of the Cuprill Law Firm to represent Debtor in proceedings under 11 U.S.C. Chapter 11."

Cuprill contacted Luis C. Marini, Esq., counsel for Parliament High Yield Fund, LLC ("Parliament"), "who advised Cuprill that Debtor's management had requested Parliament to, inter alia, make available to Debtor the $75,000.00 to be advanced to the Cuprill Law Firm. Subsequently, Mr. Marini informed Cuprill that Parliament was willing to do so, being aware that the Cuprill Law Firm's representation would be that of Debtor and not ATWH, Conexus or anybody else. The $75,000.00 were advanced by Parliament through ATWH's bank account, controlled by Parliament."

Before the execution of the professional services agreement and the payment of the $75,000.00 advance, Cuprill advised Keith St. Clair and attorney Tester that the services by the Cuprill Law Firm would be solely to Debtor, and that the Cuprill Law Firm would not represent

-3-

ATWH, Conexus, or Mr. St. Clair, who advised Cuprill that Mr. Tester was his and ATWH's counsel.

Attorney Cuprill stated that "[d]ue to the complexity of Debtor's financial affairs, the nature of its business and the development of information as Debtor's 11 U.S.C. Chapter 11 progresses, it is expected that there will be other amendments to the Schedules and the SOFA, not unusual in complex Chapter 11 cases."

Also, if there is evidence of action against ATWH which is warranted, the Debtor will proceed with the corresponding actions, pursuant to his fiduciary duty to assist the Debtor in complying with its obligations as a debtor-in-possession, "subject to the limitations on a trustee in a case under 11 U.S.C. Chapter 11 and such limitations or conditions as the Court prescribes, Debtor has all the rights, other than the right to compensation under 11 U.S.C. § 330, and powers, and is to perform all the functions and duties specified in 11 U.S.C. § § 1106(a)(2)(3) and (4) of a Trustee serving in a case under 11 U.S.C. Chapter 11."

Schedule E/F has been amended to reflect that the amount of $385,000.00 regarding ATWH is listed as disputed and subject to offset. Schedule G has been amended to include the management agreement between Debtor and ATWH. It will be further amended to reflect the termination date of all listed contracts. The accounts receivable from Debtor's related entities, including the account receivable from ATWH has been listed in Amended Schedule A/B.

Attorney Cuprill answers the UST's statement as to the non-inclusion in the Cuprill Law Firm Application signed by Mr. St. Clair, that ATWH is both Debtor's creditor and debtor, the same "should be deemed amended to that effect, as that omission was with no intention not to disclose the same and merely an inadvertent omission, not considered at the time of the drafting of the Applications, since the information is provided in the Schedules."

The United States Trustee correctly states that ATWH is listed as Debtor's co-debtor in Schedule H with respect to certain creditors and that during the pandemic Debtor received $350,000.00 from an Economic Injury Disaster Loan provided by the Small Business Administration and refers to certain disbursements from said loan.

"As to the United States Trustee's last item regarding the transfer by Debtor of its interest in 124 units at the Condominium to 124 LLCs with the corresponding number of each such unit, complaint has been filed against the 124 LLCs and Conexus, Adversary No. 22-00055-ESL for its recovery, as a simulated sale. Part 9, item 55.2 of Schedule A/B has been amended accordingly. This adversary proceeding is a clear example of the Cuprill Law Firm and Cuprill's performance of their fiduciary duties as counsel to Debtor, as a debtor-in-possession, when 69 days after the filing of Debtor's 11 U.S.C. Chapter 11 petition, in a very complex case, the adversary proceeding has been filed. Any warranted action by Debtor is intended to be pursued, be it against ATWH, Conexus or any other third party, upon the corresponding information being provided, following the holding of In re McKinney Ranch Associates, 62 B.R. 249, 254 (Bankr. C.D. Cal. 1986), cited at page 5 of the Position."

"Finally, the Cuprill Law Firm and Cuprill don't possess or assert any economic interest that would tend to lessen the value of the Debtor's estate or that would create either an actual or potential dispute in which Debtor's estate is a rival creditor or possess a predisposition under circumstances that render a real basis against the estate. In re El San Juan Hotel Corp., 239 B.R. 635, 646-47 (1st Cir. B.A.P. 1999); In re CF Holding Corp., 164 B.R. 799 (Bankr. D. Conn. 1994)."

"In this case the $75,000.00 advance was actually made by Parliament, on behalf of Debtor, through ATWH, and even assuming that it was made by ATWH itself a related entity credit debtor with no adverse interest at the time of the disbursement, considering the totality of the circumstances and the other factors, including that the disbursement was not and is not linked or conditioned in providing any favorable result to ATWH, or any of Debtor's related entities, their shareholders, or Parliament, doesn't create an actual or potential conflict of interest on the part of the Cuprill Law Firm or Cuprill. (See In re Costa Bonita Beach Resort, 479 B.R. 14, 38 (Bankr. D. P.R. 2013); In re Am. Int'l Refinery, Inc., 676 F.3d 455, 462 n. 9 (5th Cir. 2012)), both cited at page 6 of the Position."

"It must be underscored that the Cuprill Law Firm only represents Debtor in this case, not ATWH or any other party who could be a debtor or a creditor. In re Interwest Business Equip., 23 F.3d 311 (10th Cir. 1994)."

UST Motion in Compliance with Court Order

On August 19, 2022, the Court ordered the UST to state its position to the Debtor's counsel's response. The UST stated its position on August 25, 2022, reiterating that "the conflict-of-interest concerns raised in the Position remain." First, Attorney Cuprill's retainer was financed by Parliament, a creditor in the case. Thus, the nature of Parliament's claims should be more fully described. "Second, although Attorney Cuprill maintains he is free from conflicts and will pursue any account receivable collections or avoidance actions, he qualifies that he will only do so if "the resources to do so are available." Cuprill should clarify whose resources, the Debtor's or the related entities? It has already been mentioned that neither ATWH nor Conexus have any operations, yet Debtor has paid ATWH fees pursuant to a management agreement."

Cuprill Response

" . . . Parliament Capital, LLC ("Parliament") approved the use of $75,000 from funds due by ATWH to Parliament, thus not a loan by Parliament. ATWH was to receive $200,000-from the sale assets during 2021. However, under the loan agreement between ATWH and Parliament those funds were to be directed to Parliament as an advance payment on the loan. Given the financial position of ATWH and Debtor, Parliament allowed the use by ATWH of $75,000.00 of those funds to cover the advance payment to the undersigned."

Parliament is not included in Schedule D to Debtor's petition but is included in Schedule E/F with an unsecured contingent claim for $6,572,379.81. "Parliament's claim arises from Debtor's guarantee of Parliament's loan to ATWH, secured by a mortgage on units at the ESJ Towers Condominium in which Debtor has an interest, including those of the LLC's object of adversary number 20-00055, which due to their value of $11,800,000.00, and CRIM's Oriental Bank's senior secured claims respectively for $278,351.16 and for $16,003,627.14, thereon, renders Parliament's claim unsecured."

Since the Advance Payment did not originate from a loan by Parliament to ATWH, nor was it financed thereby, it is an error for the United States Trustee to suggest that the payment of the Advance Payment "may create a conflict of interest, as the interests of secured creditors are usually at odds with the use of the unsecured creditors". There was no granting of a security interest by Debtor or anyone else in reference to the Advance Payment made to Cuprill by ATWH or as to its repayment.

"As to the United States Trustee's second request for clarification regarding the undersigned's statement that he is free from conflict and will pursue any account receivable collection or avoidance actions provided the necessary resources are available, the resources to which the undersigned was obviously referring are Debtor's personnel and any experts which are deemed necessary in order to investigate, analyze, determine and process such actions and Debtor's availability of funds for any payments related thereto. Those causes of action could include ATWH, based on the development of the facts and the applicable law that could warrant the same. It is further clarified that contrary to the United States Trustee's assertion that the Response indicates "that ATWH received $75,000 from Debtor around December 2021" from "an EIDL provided by SBA", "which has not been paid back", on the basis of the information provided by Mr. Hernández, the Response at paragraph 34 stated that the nature of this transaction was an "advance on balance owed". ATWH only source of revenues comes from a professional service agreement with the Debtor, which has been in place since June 2016."

<u>Marini Pietrantoni Muñiz, LLC ("MPM") Verified Statement (dkt. #117)</u>

MPM represents the following parties-in-interest/creditors: Parliament High Yield Fund, LLC ("Parliament"); Attenure Holdings Trust 1 ("Attenure") and HRH Property Holdings LLC ("HRH" and together with Attenure, the "Attenure Entities").

Parliament provided certain loans to the Debtor and its affiliates prepetition. MPM represents Parliament in connection with such loans.

"Prior to the Petition Date, the Attenure Entities, the Debtor and the Condominium Association of ESJ Towers (through their representative, Mr. Keith St. Clair) executed a Purchase And Sale, Assignment And Conveyance Agreement (the "Assignment and Sale

Agreement"), relating to the transfer and sale of a fee simple title to an interest in the insurance claims and certain associated proceeds, dated February 28, 2019, authenticated under affidavits number 674, 675 and 676 of Notary Public Rubén G. Fernández Agramonte and a special power of attorney deed in favor of HRH."

"On September 5, 2019, the Attenure Entities, along with the Debtor and the Association, filed, in accordance with the Assignment and Sale Agreement, a complaint against Chubb Insurance Company of Puerto Rico ("Chubb") in the case styled Consejo de Titulares del Condominio ESJ Towers, ESJ Towers, Inc., Attenure Holdings Trust 1 y HRH Property Holdings LLC v. Chubb Insurance Company of Puerto Rico, Civil Case Num. CA2019CV03427 in the Court of First Instance of Carolina (the "State Court Litigation"). The State Court Litigation relates to certain insurance claims as a result of damages from Hurricane Irma and Maria against Chubb. MPM represents the Attenure Entities in connection with such litigation and claims."

MPM certifies that it possesses no claims against, or interest, in the Debtor in this bankruptcy case.

Hearing on Conflicts of Interest

The contested matter presently before the court was heard on September 14, 2022. See minutes at dkt. #133. The parties argued their respective positions. The court found that the UST had raised valid concerns and that the same had been addressed by counsel for the debtor. The court took under advisement the matter regarding the conflict/adverse interest of counsel for the debtor.

Applicable Law

Section 327 of the Bankruptcy Code, 11 U.S.C. §327, provides that "the trustee, with the court's approval, may employ one or more attorneys to represent or assist the trustee in carrying out the trustee's duties." A debtor in possession has the powers of a trustee to retain counsel, 11 U.S.C. §1107(a). A Chapter 11 debtor in possession must seek court approval to retain a professional that is both disinterested and has no adverse interest to the estate. An attorney for a debtor in possession cannot represent conflicting interests. Inherent in this obligation is a duty

to disclose all conflicts and potential conflicts an attorney may have. Hon. Joan n. Feeney (Ret.), Hon. Michael G. Williamson, Michael J. Stepan, Bankruptcy Law Manual, 5th Edition 2022, §4:23.

Disinterested person is a statutorily defined term. Section 101(14) of the Bankruptcy Code, 11 U.S.C. § 101(14), defines "disinterested person" as a person who is not a creditor, an equity security holder, an insider; a director, officer or employee of the debtor within two (2) years from petition date; and "does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." What constitutes an "adverse interest" is a concept that has been judicially developed.

Courts are split on the impact of an actual or a potential conflict in determining whether there is an adverse interest. William L. Norton III, 2 Norton Bankr. L. & Prac. 3d § 30:5. The First Circuit Court of Appeals in In re Martin, 817 F2d 175, 180 (1st Cir. 1987), determined that bankruptcy courts have the "responsibility to monitor the integrity of the proceedings before it. . . . a duty which demands that the court root out impermissible conflicts of interest between the attorney and client . . ." There is no bright-line rule precluding an attorney from safeguarding the payment of his/her fees, as debtors may be unable to furnish cash retainers. In re Martin, at 181. The inquiry is case-specific and requires full and timely disclosure. In re Martin, at 182. The screening includes the appearance of impropriety upon a fact-specific inquiry to determine if there is an impermissible conflict of interest. Rome v. Braunstein, 19 F3d 54, 58 (1st Cir. 1994).

The court in In re Glenn Elec. Sales Corp., 99 B.R. 596 (D.N.J. 1988), held that the fact that a retainer for representation of a Chapter 11 debtor was paid by the debtor's shareholder who borrowed money for the retainer from an affiliate of a creditor of the debtor does not necessarily represent an interest adverse to the estate. However, this payment may give an appearance of a conflict and must be disclosed when applying for employment. A key factor is disclosure of connections that may give the appearance of a conflict. In re Everest Crossing, LLC, 2011 WL 4352119 (Bankr. Mass. 2011).

The bankruptcy court must engage in a case-specific analysis to determine if there is a disqualifying conflict of interest. Disapproval of an application for employment is mandatory if there is an actual conflict. Determining whether there is a potential conflict in a large case requiring a competent professional requires considering whether the possibility of a potential conflict is remote and balancing the needs for employing the professional person in question. In re Straughn, 428 B.R. 618 (Bankr. W.D. Pa. 2010).

This court analyzed the applicable legal provisions to the conflict of interest in In re Costa Bonita Beach Resort, Inc., 479 B.R. 14, 35 – 38 (Bankr. P.R. 2012). The court stated the following:

Fed. R. Bankr. P. 2014(a) governs the requirements regarding the employment of professional persons. Fed. R. Bankr. P. 2014 is pivotal because it is the mechanism by which information is provided to the court and the United States Trustee to determine whether the professional's employment is in the best interest of the estate. See Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶ 2014.03 (16th ed. 2012). Fed. R. Bankr. P. 2014(a) requires that the attorney to be employed by the debtor, disclose "... any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants." Fed. R. Bankr. P. 2014(a). The application for employment must also be accompanied by a verified statement which discloses, "the persons connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants." Fed. R. Bankr. P. 2014(a). Although Fed. R. Bankr. P. 2014 does not require continuous disclosure, courts have interpreted that the professional has the self-imposed obligation to continuously update and fully disclose to the court whether there are any circumstances which might suggest either an actual or potential conflict. See Kagan v. Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 647 (1st Cir. BAP 1999) citing Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir.1994). "Although an attorney need not disclose every past or remote connection with every party in interest, he must disclose those presently or recently existing, whether they are of a business or personal in nature, which could reasonably have an effect on the attorney's judgment in the case." In re El San Juan Hotel Corp., 239 B.R. at 647.

Fed. R. Bankr. P. 2014 implements Section 11 U.S.C. § 327(a). Section 327(a) is the statutory provision that establishes the standard of conflicts of interests regarding the employment of professionals, including debtor's attorney. Section 327(a) provides in its pertinent part;

-10-

"[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

Thus, an attorney may be employed by a debtor if the two prong test of 11 U.S.C. 327(a) is satisfied, that is, that said attorney: (1) does not hold or represent an interest adverse to the estate; and (2) that he or she is a disinterested person. The First Circuit has recognized that there is an overlap in the two prongs of Section 327(a) to determine whether a professional has a conflict of interest. See In re Martin, 817 F.2d 175, 179 (1st Cir.1987) ("It can readily be appreciated that the concepts of disinterest on the one hand, and materially adverse interest, on the other hand, are somewhat intertwined"). The First Circuit has established that, "these statutory requirements disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." Rome v. Braunstein, 19 F.3d at 58.

Section 101(14) defines the term "disinterested person" as a person that;

"(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition a director, officer or employee of the debtor; and

(C) does not have an interest materially adverse to the to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

The Bankruptcy Code does not define the phrase "interest materially adverse to the interest of the estate." However, "[c]ourts interpret it as 'the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real.' " Kagan v. Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 646 (1st Cir. BAP 1999) citing Electro–Wire Prods. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 361 (11th Cir.1994). The concept of "adverse interest" has been interpreted "as the possession or assertion [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which ... of them the disputed right or title to the interest in question attached under valid and applicable law; or (2) [the possession] of a predisposition or interest under circumstances that render such bias in favor of or against one of the entities." Rome v. Braunstein, 19 F.3d 54, 58 at n. 1 (1st Cir.1994) citing In re Roberts, 46 B.R.815, 822 (Bankr.D.Utah 1985). The First Circuit has established

a test to determine whether the two prong test of Section 327(a) has been satisfied. The court must analyze the facts of the case at hand to assess whether the targeted interest creates "... either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." In re Martin, 817 F.2d at 180.

DF Servicing argues that Debtor's counsel fails to satisfy the "disinterested" requirement of Section 327(a) and the definition of "disinterested person" of section 101(14)(C) because Debtor's counsel may not represent the Debtor and accept monies from Debtor's principals and/or affiliated (related) companies (entities) which are also creditors of the estate since this creates an actual or potential conflict of interest for Debtor's counsel since he would be serving two masters. DF Servicing also argues that Debtor's counsel in the prior bankruptcy case disclosed incorrectly that the payments made to Debtor's counsel would be paid by Debtor or related entities belonging to the shareholders of Costa Bonita Holding, Inc., and this provides a basis for disqualification.

This court finds that the Cuprill Law Firm is not currently representing or has represented any of the creditors which are in turn affiliated corporations of Debtor and whose shareholders are common to the shareholders of the Debtor's sole shareholder; namely Costa Bonita Holding Company, Inc. In the prior case there were payments made by Debtor's related entities to the Cuprill Law Firm. Even though they may not have been fully disclosed in the prior case, the same have now been clarified to this court as it relates to the motion to disqualification. In the instant case, Debtor's counsel has not received a retainer from related entities that are creditors as pursuant to Debtor's counsel Disclosure of Compensation under Fed. R. Bankr. P. 2016 (Docket No. 3). Debtor's counsel in the verified statement attached to his application for employment disclosed in paragraph 62 that the source of the funds of Debtor's counsel compensation will be from Debtor and/or by entities related to or belonging to Costa Bonita Holding Company, Inc.'s shareholders (Docket No. 6).

The court concludes that Debtor's counsel's compensation payments from creditors of the Debtor that are related entities with common shareholders does not create for Debtor's counsel a "meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than an acceptable risk—or the reasonable perception of one," since these creditors, which are related entities, do not have an adverse interest to that of the bankruptcy estate.

Discussion

The UST correctly complied with its duty of raising concerns as to the possible conflict of interest that the Cuprill Law Firm may have in representing the debtor due to the source of

-12-

funds to pay his retainer and the interaction between related entities as the same may affect the fiduciary duty of debtor's counsel to take action against the same. The record shows that attorney Cuprill has addressed the UST's concerns as originally expressed and subsequently reaffirmed.

Attorney Cuprill has disclosed all existing connections with the debtor and its affiliates. There is no specific fact that shows that Cuprill will fail to comply with his fiduciary duties to the debtor and the estate. After a thorough analysis of all relevant facts, the court cannot discern any actual or potential dispute that may create a predisposition to act in detriment of the estate. The source of the funds to pay Cuprill's retainer has been disclosed and explained by Cuprill and corroborated in the verified statement by MPM.

## CONCLUSION

In view of the foregoing, the court concludes that attorney Cuprill does not have a conflict or adverse interest with the debtor or the bankruptcy estate. Therefore, the Cuprill Law Firm may continue representing the debtor, cognizant of its continuous duty of disclosure.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of October 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge

-13-