IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-01676 (ESL) |
| ESJ TOWERS, INC. D/B/A MARE ST. CLAIR HOTEL | CHAPTER 11 |
| Debtor | |

OPINION AND ORDER

This case is before the court upon ESJ Towers Condominium Homeowners Association (hereinafter referred to as "ESJ HOA") *Urgent Motion for Relief from Automatic Stay* (dkt #140); *Colebrook's Objection to HOA's Urgent Motion for Relief from Automatic Stay* (dkt #167); *Debtor's Opposition to Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay* (dkt #194); *Motion for Leave to File Reply to "Opposition to Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay"* (dkt #218); *Amended Motion to Quash Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay* (dkt #301); and *Creditor ESJ HOA's Opposition to "Amended Motion to Quash Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay"* (dkt #306). For the reasons set forth below, the Court denies the following: (i) *Amended Motion to Quash Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay*; (ii) Colebrook's *Objection to HOA's Urgent Motion for Relief for Relief from Automatic Stay*; and (iii) *ESJ HOA's Urgent Motion for Relief from Automatic Stay*.

Jurisdiction

-1-

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(K) and (G). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Relevant Procedural Background

On June 10, 2022, the Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. On September 9, 2022, the Debtor included in its Schedule E/F: Creditors Who Have Unsecured Claims; the ESJ HOA as a nonpriority unsecured claimant for the following: (i) in line item 3.66 a disputed unsecured debt in the amount of $3,397,771.68 that was incurred during the years 2016-2022 for association fees and (ii) in line item 3.67 a disputed unsecured debt in the amount of $1,202,670.00 for rent. (Dkt #109, pg. 31). On October 17, 2022, the ESJ HOA filed amended proof of claim number 98-2 in the amount of $4,364,980.60 which is listed as a statutory lien pursuant to article 60 of the Puerto Rico Condominium Act, 31 L.P.R.A. §1923e, and the basis of said claim is for maintenance fees and insurance assessment. On October 12, 2022, the ESJ HOA filed proof of claim number 99-1 as an unsecured claim in the amount of $1,262,918.00 for arrears on lease areas 1 to 5 and on lease of unit 272. On October 17, 2022, the ESJ HOA filed amended proof of claim number 100-2 in the amount of $5,769,463.50 as an unsecured claim for damages and misuse of insurance proceeds. Also on October 17, 2022, the ESJ HOA filed amended proof of claim number 101-2 in the amount of $3,945,024.50 which is listed as unsecured and the basis of said claim is for misuse of HOA funds and proceeds as manager and reimbursement and damages. ESJ HOA filed proof of claim number 102-1 in the amount of $84,332.00 for an unsecured contingent claim for damages and misuse of insurance proceeds.

On October 3, 2022, the ESJ HOA filed an *Urgent Motion for Relief from Automatic Stay* pursuant to 11 U.S.C. §362(d) and (e) due to Debtor's failure to pay its post-petition maintenance fees for the past four months so that it may proceed to disconnect the utilities of the Debtors'

alleged wholly controlled 124 condominium units out of the 274 units in which the Debtor has an interest. (Dkt #140). On October 11, 2022, Colebrook Financial Company, LLC (hereinafter referred to as "Colebrook") filed its *Objection to ESJ HOA's Urgent Motion for Relief from Automatic Stay* premised upon failure to join indispensable parties, such as Vacation Club owners (timeshare owners), and secured creditors holding claims against the 124 units. Moreover, the disconnection of the utility services could hinder the Debtor's ability to reorganize its finances. (dkt #167). On October 18, 2022, the Debtor filed its *Opposition to Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay* contending that ESJ HOA does not have a perfected security interest in property in which Debtor's estate has an interest, requiring adequate protection. Adequate protection applies only to the value of the property and the HOA has not established having an interest in Debtor's property. (dkt #194). On October 25, 2022, ESJ HOA filed a *Motion for Leave to File Reply to "Opposition to Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay."* (dkt #218). On October 28, 2022, ESJ HOA filed a *Motion to Supplement "Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay"* to include certain exhibits which the ESJ HOA alleges support its request for maintenance fees for necessary repairs and improvements. (dkt #226).

On November 1, 2022, a hearing on the motion for relief from the automatic stay was held in which counsel for the ESJ HOA and the Debtor informed that they were undergoing negotiations and as such the parties requested time to move the court after their discussion. The Court disclosed the following questions of concern: "1. How will the ESJ Homeowners Association benefit from discontinuing utility services from the units owned by the debtor. 2. What actions/plans/provisions has the debtor taken to meet the post-petition administrative expenses for maintenance fees? 3. What is the proportion of rent/income received by the debtor as compared to the maintenance fees? 4. Has the ESJ Homeowners Association registered as a lien the amounts owed by the Debtor for maintenance fees? Court notes its decision in In re Ibañez, 2022 WL 256776, 2022 Bankr. LEXIS 212 (Bankr. D.P.R. January 27, 2022). 5. What is

the role of Wigberto Lugo Mender as trustee for the ESJ Homeowners Association? The court is particularly concerned with the structural evaluation report attached to trustee's communication to the ESJ HOA (dkt #226)." (dkt #238, pg. 2). The Court ordered the parties to inform the court on or before November 18, 2022, on the status of their discussions/negotiations. On November 15, 2022, the Debtor filed an *Amended Motion to Quash Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay* based upon HOA's alleged failure to comply with Fed. R. Bankr. P. §§4001(a)(1), 9014(b) and 7004(a)(9) and (g). (dkt #301). On November 10, 2022, ESJ HOA filed a *Motion to Inform Developments After November 1, 2022 Hearing* (dkt #287). On November 14, 2022, the Debtor filed its *Opposition to Creditor ESJ HOA's Motion to Inform Developments After November 1, 2022, Hearing and Request that it be Quashed* (dkt #298). On November 18, 2022, ESJ HOA filed its *Opposition to "Amended Motion to Quash Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay"* contending that the motion for relief was served with notice on Charles A. Cuprill Hernández, the U.S. Trustee's Office, creditors in the CM/ECF System & parties on attached Exhibit A" by U.S. Mail in compliance with applicable Bankruptcy rules and local rules of this court. (dkt #306). On November 21, 2022, the Debtor filed its *Motion in Compliance with Order of November 1, 2022*. (dkt #315).

Position of the Parties

*ESJ HOA*

ESJ HOA contends that relief from the automatic stay is warranted due to lack of adequate protection of an interest in property of ESJ HOA. ESJ HOA argues that there is cause to lift the stay to allow HOA to disconnect the utilities of the 124 units for failure to pay post-petition maintenance fees. The ESJ HOA asserts that lifting the stay allowing ESJ HOA to proceed to disconnect the utilities for the 124 units will provide the incentive to the Debtor to pay its monthly obligations. ESJ HOA's legal basis is the following: (i) the ESJ Master Deed and Bylaws provide that the Debtor's obligation to pay maintenance fees or common charges are

inseparably connected to the ownership of the condominium units; (ii) Article 59 of the Puerto Rico Condominium Act allows for utilities to be disconnected after the Board provides fifteen (15) days' notice for the payment of maintenance fees that are past due for more than two (2) monthly payments. Debtor does not dispute that it received proper notice of the demand letter as required by Article 59; and (iii) Article 60 of the Puerto Rico Condominium Act provides that, "[a]n apartment owner's liability for his percentage of interest in the common expenses shall constitute a lien on said apartment." Article 60 further states, "[s]aid liability shall be due and payable from whomever is the owner of the property comprising the apartment even if it has not been yet segregated and recorded as a filial estate in the Property Registry or alienated in favor of any person." ESJ HOA argues that under the previous law, Section 41 of the Puerto Rico Condominium Law required the lien to be registered, but not anymore. ESJ HOA asserts that if the Debtor's position is that the 124 LLC units belong to it, then the Debtor must pay post-petition maintenance fees and if they are not part of the Debtor's estate, then there is no stay of proceedings. The ESJ HOA argues that it does not owe the Debtor $1,500,000.00 for capital improvements. This issue is covered by the Lease Agreement dated November 20, 2015 (Motion for Rejection of Lease Agreement, dkt #178, Exh. 1) which states in pertinent part that "[t]enant [ESJ Towers Inc.] is undertaking at its own expense significant improvements to the Building in excess of $1,000,000.00 which will insure to the benefit of and at no cost to all owners of ESJ and the Council" (Refer to Lease Agreement at Recitals, at 4, dkt #178).

ESJ HOA clarifies that the 124 units on ESJ HOA's list are not the same as the 124 LLC units. "There are 54 Units that belong to Debtor that are not part of the 124 LLC Unit transfer scheme and are currently being used as a Hotel. In addition, the remaining 70 units are part of the 124 LLCs and there are no deeded part owners (vacation owners) in any of the units that ESJ HOA is requesting relief of stay to shut off utilities for lack of payment of maintenance fees." (dkt #218-1, pg. 2, ¶3).

-5-

The Court notes that the prayer of ESJ HOA's reply to Debtor's opposition requested relief of stay to allow ESJ HOA to use its remedies under state law to compel Debtor to pay its post-petition maintenance fees. Notwithstanding, ESJ HOA has also filed in this Court a *Motion for Allowance and Payment of Administrative Expense Claim* pursuant to section 503(b)(1) by which it requests the Court to order the Debtor to pay post-petition maintenance fees for the months of June, July, August, and September 2022 for 274 units, which includes the 124 units which were sold to the 124 LLCs. (dkt #123). This matter is currently pending before the court and there is a scheduled pre-trial conference regarding the same on April 28, 2023. (dkt #527). The Court finds that ESJ HOA's request for relief from the automatic stay to be able to use its remedies under state law to compel the Debtor to pay the post-petition maintenance fees is duplicative in nature and a waste of judicial resources, given that there is currently pending before this Court a request for allowance and payment for administrative expense.

*Colebrook*

Colebrook argues that ESJ HOA's motion should be denied for failure to join indispensable parties, such as Vacation Club owners (timeshare owners), or secured creditors holding claims against the 124 units. ESJ HOA has failed to submit evidence that all persons or entities holding an interest over the 124 units have been apprised of the amounts owed by each individual unit and afforded reasonable time for such parties to protect their proprietary rights or security interests. Colebrook asserts that disconnection of facilities to the 124 units over which Debtor claims to have a proprietary interest would interfere with the use of rights of such Vacation Club owners and could seriously hinder Debtor's ability to reorganize its finances and may cause irreparable harm to the estate, to vacation club owners (timeshare owners), or to secured creditors. Colebrook owns more than fifty percent (50%) of the loan value of the secured portfolio of timeshare loans which is supported by the sale of Vacation Club Interests in the 124 condominium units in which the ESJ HOA proposes to suspend utility services. Colebrook's

ability to collect from its Vacation Club owners holding interests in the 124 units would be severely affected by the disconnection of utility facilities. Colebrook also argues that ESJ HOA has taken contradictory or mutually exclusive positions with regards to its administrative claims against Debtor.

*Debtor*

The Debtor asserts that ESJ HOA, contrary to its allegations in its motion for relief from stay, in adversary proceeding 22-00055, filed a motion to intervene and join Oriental Bank's opposition to the clawback remedies requested by the Debtor. Therefore, Debtor's ownership interest in the 124 LLC's is in dispute. The ESJ HOA has failed to show cause for the requested modification of the stay provisions pursuant to section 362. The Debtor also contends that ESJ HOA under section 362(d)(1) does not have a perfected security interest in property in which Debtor's estate has an interest that requires adequate protection. Adequate protection applies only to the value of the property and the HOA has not established having an interest in Debtor's property. ESJ HOA alleges that the Debtor owes $209,536.00 for the 124 LLCs, for post-petition maintenance to the ESJ HOA, averring that such a claim constitutes actual, necessary costs and expenses for preserving the Condominium and thus confers a benefit to the Debtor, constituting an administrative expense under 11 U.S.C. §503(b)(1)(A). Lastly, the Debtor argues that the ESJ HOA owes the Debtor in excess of $1,500,000.00 in capital improvements to the Debtor that should be set-off against HOA's claim.

Issues

The Court will first address the Debtor's *Amended Motion to Quash ESJ HOA's Urgent Motion for Relief from Automatic Stay* in which the Debtor argues that ESJ HOA failed to comply with Fed. R. Bankr. P. 4001(a)(1) and 9014 because a motion for relief from the automatic stay requires that it be served on any committee appointed under 11 U.S.C. §1102 or on the creditors included on the list filed pursuant to Fed. R. Bankr. P. 1007(d). Then, the Court

will address Colebrook's objection regarding ESJ HOA's motion for relief from the automatic stay. Lastly, the Court will delve into ESJ HOA's motion for relief from the automatic stay and the Debtor's opposition to the same.

Applicable Law and Analysis

Fed. R. Civ. P. 4001(a)(1) provides:

> "[a] motion for relief from the automatic stay provided by the Code or a motion to prohibit or condition the use, sale, or lease of property pursuant to §363(e) shall be made in accordance with Rule 9014 and shall be served on any committee elected pursuant to §705 or appointed pursuant to §1102 of the Code or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to §1102, on the creditors included on the list filed pursuant to Rule 1007(d), and on such other entities as the court may direct."

"Rule 4001(a) addresses the issue of which parties must be served with a motion for relief from a stay. At a minimum, it had always been assumed that such a motion should be served upon the parties against whom relief was sought, i.e., the debtor or debtor in possession, the attorney for the debtor or debtor in possession, and the trustee, if one has been appointed, as well as his or her counsel." Richard Levin & Henry J. Sommer, 9 <u>Collier on Bankruptcy</u> ¶4001.2[3] (16th ed. 2022). "The rule also specifies that a motion for relief from the stay must also be served on any committee elected pursuant to Code section 705 or appointed pursuant to Code section 1102, or the authorized agent of such committee. If the case is a chapter 9 case or a chapter 11 case and no committee of unsecured creditors has been appointed, the motion must be served on the creditors holding the 20 largest unsecured claims as listed pursuant to Rule 1007(d)." Id.

-8-

The ESJ HOA contends that Debtor's arguments are untimely and baseless because the motion for relief of stay (dkt #140) was served with the notice on "Charles A. Cuprill Hernández, the U.S. Trustee's Office, creditors in the CM/ECF System & parties on attached Exhibit A" (dkt #149) by U.S. Mail in compliance with applicable Bankruptcy Rules and local rules of this court. It was served on all creditors including the members of the committee by U.S. mail. On October 18, 2022, the Debtor filed its opposition to ESJ HOA's motion for relief from the automatic stay and did not question the service of the motion. Moreover, the Debtor did not raise the issue on the November 1, 2022, hearing.

ESJ HOA's motion for relief from the automatic stay was filed on October 3, 2022 (dkt #140) and the Certificate of Service was filed on October 7, 2022, in which ESJ HOA's counsel certified under penalty of perjury that a copy of Notice and Motion were served upon Charles A. Cuprill Hernández, the U.S. Trustee's Office, creditors in the CM/ECF System & parties on attached Exhibit A. (dkt #149). The *Notice of Appointment of Unsecured Creditors' Committee by United States Trustee* was filed with the Court on September 12, 2022. (dkt #111). The *Application for Order Authorizing the Retention of MRO Attorneys at Law, LLC, as Counsel for the Official Committee of Unsecured Creditors of ESJ Towers, Inc.* was filed on October 5, 2022, and it had an objection period of fourteen (14) days (dkt# 143) and the same was approved on November 3, 2022. (dkt #242). ESJ HOA in the Exhibit List of persons and entities served with notice and motion included the members of the unsecured creditors' committee that were appointed by the United States Trustee and the twenty (20) creditors who have the largest unsecured claims that are not insiders as listed in Official Form 204. (dkts #111 & 27, pgs. 3-5) (Dkt #149-1, Exhibit List). The Court finds that ESJ HOA complied with Fed. R. Bankr. P. 4001(a) and 9014. Therefore, the Debtor's argument is unfounded.

The Court finds that Colebrook's legal issues concerning the vacation club owners which hold interests in the 124 units and the negative effect on its ability to collect from the vacation

club owners if the utility services were disconnected are mooted by ESJ HOA's clarification that for purposes of the motion for relief of the automatic stay, units with vacation owners are not included. ESJ HOA stated that, "[t]here are 54 Units that belong to Debtor that are not part of the 124 LLC Unit transfer scheme and are currently being used as a Hotel. In addition, the remaining 70 units are part of the 124 LLCs and there are no deeded part owners (vacation owners) in any of the units that ESJ HOA is requesting relief of stay to shut off utilities for lack of payment of maintenance fees." (dkt #218-1, pg. 2, ¶3). Moreover, ESJ HOA in footnote 2 states that, "[i]f there are any Units in question with vacation owners, ESJ HOA agrees to leave out such units for purposes of the Motion for Relief of Stay. Debtor did not identify any unit in the list as having a third-party vacation owner." (dkt #218, pg. 2, fn. 2).

The Court will next delve into the legal issues regarding the ESJ HOA's Motion for Relief from the Automatic Stay.

### *Relief from the automatic stay provisions*

The automatic stay provisions of 11 U.S.C. §362(a) are fundamental to allow a Chapter 11 debtor a reasonable attempt to reorganize. The automatic stay acts as an injunction to protect the property of the estate and becomes operative by the mere filing of a bankruptcy petition. In re Soares, 107 F. 3d 969, 971 (1st Cir. 1997). Hence, the "automatic" reference in the statutory provision and its effect. The broad scope and strength of the automatic stay in favor of the debtor is balanced by the rights afforded to the creditors in 11 U.S.C. §362(d)- (g). A party seeking relief from the automatic stay must file a motion under §362(d) and Fed. R. Bankr. P. 4001.

Relief from stay must be granted upon a showing of cause for relief. Lack of adequate protection of a party's interest in property is the most common basis for granting relief for cause under 11 U.S.C. §362(d)(1). See Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy ¶362.07[3] (16th ed. 2022). "'Adequate protection' is mandated by certain provisions of the Code

when requested by an entity with an interest in property in which the estate has an interest. An entity is entitled to adequate protection as a matter of right, not merely as a matter of discretion, when the entity is stayed from enforcing its interest, when the estate proposes to use, sell or lease property in which the entity has an interest, and when property on which the entity has a lien is to be used as collateral for a loan. This protection is provided both as a matter of policy and, arguably, as a matter of constitutional law." Richard Levin & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶361.02 (16th ed. 2022).

Section 362(d)(1) allows relief from the automatic stay based upon the following; "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). The Bankruptcy Code does not define the term "adequate protection," but Section 361 provides examples of what might constitute adequate protection; namely (i) periodic cash payments equivalent to decrease in value; (ii) an additional or replacement lien on other property; or (3) other relief that provides for the indubitable equivalent. <u>See</u> Richard Levin & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶362.07[3][b][1], [c], [d]. (16th ed. 2022). "While 'adequate protection' is most often discussed in connection with secured creditors, under section 363(e), a lessor of real or personal property is also entitled to adequate protection, even though it may not be entitled to relief from the stay of section 362. Courts have generally held, however, that a lessor's adequate protection rights are defined by section 365(d)(5), in the case of personal property, and section 365(d)(3), in the case of real property. In short, the lessor's adequate protection is defined by payments under the lease." Richard Levin & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶361.02[1] (16th ed. 2022).

The automatic stay provisions serve to protect property of the estate. The Debtor filed an adversary proceeding on August 16, 2022, by which it seeks to clawback its ownership interest

in these units by reversing an alleged simulated sale in which 124 units owned by ESJ Towers, Inc., were transferred to 124 different LLC's. In this adversary proceeding, the Debtor wants to set aside as a simulated sale the Debtor's transfer of interest in the 124 units to Conexus Holdings Puerto Rico, LLC. The Debtor alleges that these sales were executed without any consideration provided and simultaneously leased back to the Debtor. (Adversary Proceeding No. 22-00055, Dkt #5, pg. 6, ¶ 12). Therefore, the Debtor's ownership interest in these 124 units is in dispute. The Debtor in its Schedule G: Executory Contracts and Unexpired Leases disclosed that it had a units lease and management agreement with 124 LLC's that expire on December 2029. (dkt #109, pg. 49, item 2.1). The Court notes that the Debtor has not assumed the unexpired lease agreements with the 124 LLC's.

Thus, the first legal controversy that must be resolved as part of this controversy is whether the bankruptcy estate has a property interest in the 54 hotel units in which the Debtor is the lessee.

***Property of the bankruptcy estate***

11 U.S.C. §541(a)(1) provides that, "[e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case" constitutes the bankruptcy estate as of the time that the petition is filed. Moreover, any interest in property that the estate acquires after the commencement of the case is property of the estate pursuant to section 541(a)(7). The Debtor's rights under contracts and leases are considered property of the estate. Section 541(b)(2)[1] expressly excludes from property of the estate leases of nonresidential property that expire before the petition is filed or if they expire

---

[1] 11 U.S.C. §541(b)(2) provides in pertinent part: "[p]roperty of the estate does not include—
(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case."

during the pendency of the case. See Richard Levin & Henry J. Sommer, 5 Collier on Bankruptcy ¶541.04[3] (16th ed. 2022). "If a commercial lease has not expired or has not been terminated in accordance with its terms prior to the commencement of the bankruptcy case, the debtor's interest under the lease remains property of the estate and can be assumed or assigned." Hon. Joan N. Feeney (Ret.), et al., Bankruptcy Law Manual, Vol. I, §5:22 (5th ed. 2022-1). Notwithstanding, the subject of leases and whether the same will be assume or rejected is primarily mandated by 11 U.S.C. §365. However, in the instant case, the lessor of the 124 units has not filed any motion requesting relief under section 365(d). This Court finds that the bankruptcy estate has a property interest in the 124 units in which the Debtor was the lessee as of the petition date and continues to be the lessee until the leases expire in December 2029 or until the Debtor rejects the same. Therefore, the Debtor's interest in the leases constitutes property of the bankruptcy estate.

***Is ESJ HOA a Secured Creditor Entitled to Adequate Protection?***

ESJ HOA contends that relief from the automatic stay is warranted due to lack of adequate protection of an interest in property of ESJ HOA. ESJ HOA argues that Article 60 of the amended Puerto Rico Horizontal Property Act creates a statutory lien, meaning that the lien does not have to be registered in the Property Registry as required by the previous Puerto Rico Horizontal Property law. ESJ HOA's position is that it has a security interest on the 124 units based on these statutory liens. This Court in In re Padilla Ibanez, 2022 Bankr. LEXIS 212, *25; 2022 WL 256776 (Bankr. D.P.R. 212) held that neither the repealed law No. 104, as amended, nor the recent enacted Puerto Rico Horizontal Property Act may be interpreted as creating a statutory lien in light of the determinations by the Puerto Rico Supreme Court. Common expense debts are only secured as soon as they are registered in the Property Registry, albeit the

-13-

continuous obligation of an owner to contribute as required by law. "The lien contemplated by Article 41[2] of the Condominium Act is not self-perfecting; rather, in order to be perfected and for it to encumber the apartment, the lien must be recorded in the Registry of Property." Hernandez v. Consejo de Titulares del Condominio Villas de Punta Guilarte (In re Hernandez), 2014 Bankr. Lexis 3036, *11; 2014 WL 3534703 (Bankr. D.P.R. 2014).

This Court's legal reasoning and analysis for its holding was as follows:

"On August 16th 2020, the new Puerto Rico Horizontal Property Act was enacted with the purpose of updating the norms that regulate cohabitation in condominiums. The law derogated the previous Law No. 104 dated June 19, 1958, and all its amendments. Pursuant to the legislative explanatory memorandum, the new law attempts to harmonize the condominium regulation with the current times and the different judicial interpretations of the law issued by the Supreme Court of Puerto Rico.

As pertinent to our controversy, the new Act of 2020 states:

'Section 60.- Liability of Owner for Common Expenses, Lien.

An apartment owner's liability for his percentage of interest in the common expenses shall constitute a lien on said apartment. Therefore, after the first sale, the voluntary acquirer of an apartment shall be jointly and severally liable with the transferor for the payment of any unpaid amounts by the transferor, in accordance with Section 59, up to the time of the conveyance, without prejudice to the right of the acquirer to recover from the transferor those amounts paid as a joint debtor. However, an involuntary acquirer shall only be liable for debts on account of unpaid common expenses accrued during the six (6)-month period prior to the time of acquisition of the property, except for any amounts pertaining to late fees, assessments, interests, and penalties attributable to the owner, and shall include the current balance accrued from the acquisition of said property by the involuntary acquirer.

Said liability shall be due and payable from whomever is the owner of the property comprising the apartment, even if it has not been yet segregated and recorded as a filial estate in the Property Registry, or alienated in favor of any person. Any financial institution that provides interim financing to a person for the construction of apartments and common elements to be submitted to the Horizontal Property Regime and obtains title to the property as a result of a foreclosure or by deed in lieu of foreclosure shall not be deemed to be a Developer, as Interim Administrator, or a declarant of the regime, pursuant to the provisions of this Act; provided, that the financial institution does not

---

[2] Article 41 is the equivalent of Article 60 in the new Horizontal Property Law of 2020.

-14-

exceed the usual duties of a creditor in protecting its security interest, in accordance with the commercial practices followed by financial institutions providing interim construction financing.

Section 61.- Exceptions for Priority of Liens Against Owners.

The lien against any owner on account of an apartment owner's liability for his percentage of interest in the common expenses, referred to in Section 59 of this Act, shall have priority over any other lien of whatever nature, except for the following:

a) Liens in favor of the Government of Puerto Rico and the respective municipality for the sums of the last five (5) annual tax assessments and the current tax assessment, overdue and unpaid on the apartment.

b) For the insurance premium for the last two (2) years of the apartment, or the total property, as the case may be, and in the case of common insurance, for the last two (2) dividends distributed.

c) Mortgages recorded in the Property Registry."

New Section 60 essentially kept the same language of its predecessor Article 41. Specifically, the law states that an apartment owner's liability for his percentage of interest in the common expenses shall constitute a "lien" on said apartment. However, predecessor Article 41 specifically stated that it would become a lien *"as soon as it is registered in the Property Registry"*. Although the phrase was part of the last amended Article 41, it wasn't always included in the section.

The initial Horizontal Property Law, Law No. 104, was enacted on June 25, 1958. 31 L.P.R.A. 1293 et seq, and was amended multiple times throughout the year, until its recent derogation in 2020. Articles 41 and 39 have been thoroughly addressed by the Supreme Court of Puerto Rico in the development of the figure of the "involuntary acquirer". *See* Condominio First Fed. Sav. v. LSREF2 Island Holdings LTD, 2019 TSPR 128, 202 P.R. Dec. 934; Coop. de Ahorro y Crédito Oriental v. Consejo de Titulares Cond., 2016 TSPR 79, 195 P.R. Dec. 330; Vázquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R., 18 P.R. Offic. Trans. 930, 118 P.R. Dec. 806 (1987).

Initially, Article 41 read as follows:

'The acquirer of an apartment shall be jointly and severally liable with the conveyer for the amounts owing by the latter under Section 39 of this Act up to the time of the conveyance, without prejudice to the acquirer's right to recover from the other party the amounts paid by him as such joint debtor. 31 L.P.R.A. § 1293e.'

See Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977)

Furthermore, Article 40 stated:

'The credit against any co-owner for his share in the expenses to which Section 39 of this Act refers shall have preference over any other credits of whatever nature but the following:

(a) Credits in favor of the Commonwealth and the corresponding municipality for the taxes of the last five annual assessments and the unpaid current one, overdue and unpaid on the apartment.

(b) For two years premium on the insurance of the apartment, or of the whole property, as the case may be, and in the case of mutual insurance, for the last two dividends distributed.

(c) Mortgage credits recorded in the Registry of Property.'

See Ass'n of Co-Owners v. Naveira , 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977)

The purpose of article 41 was to turn the acquirer into a surety of the debtor. *Id.* At that point, no reference to a "lien" was part of Article 41. The reference to a "lien" was included to Article 41 through Act No. 157 of 1976, which amended Law No. 104 and stated:

Article 41

The obligation of the co-owner of an apartment for his proportionate share in the common expenses shall constitute a lien on said apartment. Therefore, the voluntary acquirer of an apartment shall be jointly liable with the conveyer for the amounts owing by the latter, pursuant to Section 39, up to the time of the conveyance, without prejudice to the acquirer's right to recover from the other party the amounts paid by him as such joint debtor.

The aforesaid obligation shall be enforcible on whoever may be the owner of the property containing the apartment, even if the same has not been segregated and recorded as a filial property in the Registry of Property, or alienated in favor of any person. (*31 L.P.R.A. § 1293e.*)

Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977)

The Naveira Court expressed that: "[a]ct No. 157 of June 4, 1976, introduced a fundamental amendment to art. 41 upon ordering that "the obligation of the co-owner of an apartment for his proportionate share in the common expenses shall constitute a lien on said apartment." This provision is tantamount to declaring that a co-owner's liability for common expenses always follows the title to his apartment even with regard to

-16-

expenses accrued prior to its purchase." Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977).

However, in Vazquez Morales v. Caguas Fed. Sav. & Loan Assoc. of P.R., 118 P.R. Dec. 806, 18 P.R. Offic. Trans. 930 (1987), the court clarified the use of the term lien on Article 41:

'The amendment introduced by Act No. 157, in no way modified or eliminated the preference of credits provided in sec. 40 of the Act, 31 L.P.R.A. § 1293d.

Commenting on the amendment to sec. 41 of the Horizontal Property Act, Dr. Alberto Ferrer recommends "the elimination of the confusing term 'lien' in referring to debts involving common expenses; or the creation--if desired--of a new kind of 'Legal Mortgage,' which should be done in very clear and specific terms.' A. Ferrer, Necesidad de reformar la Ley de Propiedad Horizontal de Puerto Rico 547 (November 1977).

On the other hand, the principles of publicity and specialty of the Registry of Property--sees. 101 and 87, 30 L.P.R.A. §§ 2351 and 2308--contained in the 1979 Mortgage Law, Act No. 198, August 8, 1979, as amended, do not admit the existence of secret liens so, in order to become effective, the "lien" mentioned in sec. 41 must be recorded in the Registry of Property. If the lien is recorded in the Registry of Property, it would be subject to the provisions of Civil Code sec. 1827 (31 L.P.R.A. § 5212), and of Mortgage Law sec. 136 (30 L.P.R.A. § 2460), which cancel the lien on the real property if the proceeds of the sale are not sufficient to pay for the preferred credits.

Vazquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R., 18 P.R. Offic. Trans. 930, 118 P.R. Dec. 806 (1987).

The Supreme Court's expressions were consistent with its determinations at that time: the voluntarily acquirer was jointly and severally liable with the conveyer for the amounts owing up to the time of the conveyance. However, the involuntary acquirer, or "those who become owners of [] apartments by exercising the preferred credit established in sub-divisions (a), (b), and (c) of art. 40 (31 L.P.R.A. 1293d) are "involuntary" acquirers and therefore, they are exempt from the liability for the common expenses of the condominium." *Id.* Throughout the years the definition of who is an involuntary acquirer has been developed by the Supreme Court of Puerto Rico, always upon the same query: is it responsible or not for paying accrued common expenses?

Article 41 was once more amended by Law 43-1996, through which the figure of the involuntary acquirer was incorporated to the law; and established that it was to be responsible for up to three (3) accrued common expense payments at the time of conveyance. See Asociacion de Condomines Galeria Profesional v. Condado 3Cr2, LLC, 2021 PR App. LEXIS 603 *13; 2021 WL 1561320 (2021).

-17-

Through a further amendment of article 41 in year 2003, the legislature imposed the responsibility to the involuntary acquirer for up to six (6) accrued common expense payments at the time of conveyance. Act No. 103 of 2003. *Id.* The legislature additionally included the phrase "as *soon as it is registered in the Property Registry"*. With the inclusion of the phrase "as *soon as it is registered in the Property Registry"* the legislature incorporated the Supreme Court's ruling in <u>Vazquez Morales</u>. The last amendment to Article 41 was made through Law No. 119-2016 to further delimit the categorization of an involuntary acquirer.

Upon the enactment of the new Horizontal Property Law of 2020, Law No. 104 dated June 19, 1958; as amended, was repealed. However, as stated before, Art. 61[3] retained the same overall language as previous amended Article 41, although the phrase *"as soon as it is registered in the Property Registry"* was left out of new Article 61[4]. However, the interpretation of the Supreme Court of Puerto Rico in considering the common expenses as "liens" was regarding an Article 41 which did not included the phrase "...*as soon as it is registered in the Property Registry*". If the legislature intended the creation of a "legal mortgage" or statutory lien, it has had ample opportunities to do so after the <u>Vazquez Morales</u> expression and should have stated it in clear terms in the new enacted law, as suggested by the Supreme Court of Puerto Rico.

<u>In re Padilla Ibanez</u>, 2022 Bankr. LEXIS 212, at *16-24 (Bankr. D.P.R. 2022).

The Court notes that the above decision was specifically cited in the minutes of the hearing held on November 1, 2022. (dkt #238). The Court further notes that the concerns raised by the Court at said hearing have not been answered.

Conclusion

In view of the foregoing, the court finds that ESJ HOA's does not have a security interest over the 124 units because the liens need to be registered, therefore ESJ HOA is not entitled to adequate protection pursuant to 11 U.S.C. §361 and it is an unsecured claimant. Consequently, ESJ HOA's *Urgent Motion for Relief from the Automatic Stay* is denied because there is no cause for relief. Also, for the reasons explained herein, the Debtor's *Amended Motion to Quash*

---

[3] It is supposed to reference Article 60 of the new Puerto Rico Horizontal Property Act.
[4] It is supposed to reference Article 60 of the new Puerto Rico Horizontal Property Act.

*Creditor ESJ HOA's Urgent Motion for Relief from Automatic Stay* is denied; and Colebrook's

*Objection to HOA's Urgent Motion for Relief from Automatic Stay* is denied.


SO ORDERED.

In San Juan, Puerto Rico, this 27th day of February, 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge