IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 22-01676 (ESL) |
| ESJ TOWERS, INC. D/B/A MARE ST. CLAIR HOTEL | CHAPTER 11 |
| Debtor | |

OPINION AND ORDER

This case is before the court upon the *Motion to Prohibit the Use of the Council's Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and/or Cash Collateral as Adequate Protection* (dkt #435) filed by the Council of Co-Owners of ESJ Towers Condominium, also known as the ESJ Towers Condominium Association (hereinafter referred to as the "ESJ HOA" or "Council"). Also pending before this Court are the following related motions: Oriental Bank's ("Oriental") *Opposition to HOA's 'Motion to Prohibit Use of the Council's Property and Cash Collateral and for the Entry of an Order to Segregate such Property and/or Cash Collateral as Adequate Protection* (dkt #491); the Debtor's *Answer to Motion to Prohibit Use of Council's Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and Cash Collateral as Adequate Protection* (dkt #514); the *Omnibus Reply of the Council to Oppositions to Motion to Prohibit Use of the Council's Property and Cash Collateral* (dkt #667); Oriental's *Sur Reply to 'Omnibus Reply of the Council to Oppositions to Motion to Prohibit Use of Council's Property and Cash Collateral'* (dkt #763); and the Debtor's *Answer to the Council of Homeowners of the ESJ Towers Condominium's Omnibus Reply to Oppositions to Motion to Prohibit Use of the Council's Property and Cash Collateral* (dkt #806). For the reasons set forth below, the court denies the ESJ HOA's *Motion to Prohibit the Use of the Council's*

-1-

*Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and/or Cash Collateral as Adequate Protection.*

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(K) and (M). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Relevant Procedural Background

On June 10, 2022, the Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. On September 9, 2022, the Debtor included in its Schedule E/F: Creditors Who Have Unsecured Claims; the ESJ HOA as a nonpriority unsecured claimant for the following: (i) in line item 3.66 a disputed unsecured debt in the amount of $3,397,771.68 that was incurred during the years 2016-2022 for association fees and (ii) in line item 3.67 a disputed unsecured debt in the amount of $1,202,670.00 for rent (dkt #109, pg. 31). On October 17, 2022, the ESJ HOA filed amended proof of claim number 98-2 in the secured amount of $4,364,980.60, on account of maintenance fees and insurance assessment. The basis for perfection of proof of claim number 98-2 is disclosed as a statutory lien pursuant to Article 60 of the Puerto Rico Condominium Act, 31 L.P.R.A. §1923e. On October 12, 2022, the ESJ HOA filed proof of claim number 99-1 in the unsecured amount of $1,262,918.00 for arrears on lease areas 1 to 5 and on lease of unit 272. On October 17, 2022, the ESJ HOA filed amended proof of claim number 100-2 in the unsecured amount of $5,769,463.50 for damages and misuse of insurance proceeds. Also on October 17, 2022, the ESJ HOA filed amended proof of claim number 101-2 in the unsecured amount of $3,945,024.50 for misuse of HOA funds and proceeds as manager, reimbursement and damages. ESJ HOA filed proof of claim number 102-1 in the unsecured contingent amount of $84,332.00 for damages and misuse of insurance proceeds.

On September 16, 2022, ESJ HOA filed a *Motion for Allowance and Payment of Administrative Expense Claim* pursuant to 11 U.S.C. §503(b)(1)(A) in the amount of $480,248

-2-

($120,062.00 per month) for post-petition maintenance fees owed by the Debtor for 274 units in the ESJ Condominium for the months of June 2022 through September 2022 and the monthly amount of $120,062.00 starting in October 2022. ESJ HOA also requested the following: (i) 10% of the outstanding maintenance fees fifteen days after the monthly installment is due and (ii) all the expenses of the Board, including attorney's fees incurred in the collection of the unpaid maintenance fees together with accrued interest as required by ESJ Tower Bylaws Section 6(D)(1) (dkt #123).

Also on September 16, 2022, the ESJ HOA initiated adversary proceeding 22-00070 against the Debtor, the conglomerate of the 151 Acquisition LLC's et al. (a total of 124 LLC's), ATWH, LLC, Connexus Holdings Puerto Rico LLC, Global Cities Capital Associates, LLC, Keith St. Clair, and Clifton V. Onolfo seeking declaratory judgment that the debts owed to ESJ HOA are excepted from discharge. On November 29, 2022, the ESJ HOA amended its Complaint alleging that the corporate veil of all the corporate Defendants should be pierced so that the exceptions to discharge in section 523 may proceed and the ESJ HOA may then ensue the causes of actions as to the nondischargeablity of the debts owed by the Debtor to ESJ HOA as to which ESJ HOA has filed proof of claims pursuant to 11 U.S.C. §523(a)(2), (4), (6), (16). (Adversary Proceeding 22-00070, dkt #15).

Thereafter, ESJ HOA initiated adversary proceeding 22-00072 against the Debtor on September 26, 2022, premised upon four (4) causes of actions namely; (i) adequate protection and injunctive relief pursuant to sections 363 and 105(a); (ii) an eviction action of common areas that allegedly belong to the management of the property; (iii) breach of 28 U.S.C. §959 and of the PR Condominium Act; and (iv) breach of contract (Master Deed) and request for specific performance, breach of the rights of owners pursuant to the doctrine of good faith, "actos propios" and abuse of rights. (Adversary Proceeding 22-00072, dkt # 17).

On October 3, 2022, the ESJ HOA filed an *Urgent Motion for Relief from Automatic Stay* pursuant to 11 U.S.C. §362(d) and (e) due to Debtor's failure to pay its post-petition maintenance

fees for the past four months so that it may proceed to disconnect the utilities of the Debtor's alleged wholly controlled 124 condominium units out of the 274 units in which the Debtor has an interest (dkt #140). ESJ HOA's *Urgent Motion for Relief from Automatic Stay* was opposed by Colebrook Financial Company, LLC and by the Debtor (dkt #s 167 & 194). On February 27, 2023, the court rendered an *Opinion and Order* (dkt #533) by which it denied ESJ HOA's *Urgent Motion for Relief from Automatic Stay*, concluding that ESJ HOA did not have a security interest over the 124 units given that the liens need to be registered, thus ESJ HOA was not entitled to adequate protection pursuant to 11 U.S.C. §361, and was determined to be an unsecured claimant.

On January 16, 2023, the ESJ HOA filed the *Motion to Prohibit Use of the Council's Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and/or Cash Collateral as Adequate Protection* (dkt #435) by which it requests an order pursuant to 11 U.S.C. §363(c)(2) prohibiting the Debtor from using the ESJ HOA's property and/or cash collateral and for adequate protection. The ESJ HOA asserts that the post-petition maintenance payments are its cash collateral and its "interest over the Debtor's interest in the Insurance Proceeds, to the extent that the Debtor may have an interest in some of those insurance proceeds, in which case, they constitute the Council's Cash Collateral" (id., p. 24). On February 7, 2023, ESJ HOA filed a *Motion for Entry of an Order Allowing and Compelling Payment of HOA's Administrative Expense Claim Pursuant to 11 U.S.C. §503* (dkt #481), requesting an order (i) granting ESJ HOA's administrative expense claim against Debtor in the amount of $687,036.33, which is the corresponding amount from November 15, 2022 through January 15, 2023; (2) ordering Debtor to continue paying each month thereafter the amount of $126,833.33 monthly in arrears for Debtor's wholly controlled 125 apartment units; and (3) granting the ESJ HOA's post-petition maintenance fees from June 2022 through October 2022.

On February 9, 2023, Oriental filed an *Opposition to HOA's 'Motion to Prohibit Use of the Council's Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and/or Cash Collateral as Adequate Protection'* (dkt #491), averring that (i) the Debtor's

interest in the insurance proceeds were duly pledged to Oriental, and hence, constitute Oriental's cash collateral and not that of ESJ HOA; (ii) the ESJ HOA has not demonstrated that it has a valid and perfected security interest over the Debtor's interest in the insurance proceeds; (iii) the court should abstain from exercising its jurisdiction over moot controversies and non-core matters; (iv) the ESJ HOA has not demonstrated that it is entitled to receive adequate protection and/or a first priority replacement lien on all of the Debtor's post-petition assets. HOA's request for a post-petition lien on all of Debtor's post-petition assets will impair Oriental's lien on such assets and thus, should be denied; (v) the ESJ HOA has not demonstrated that it has a pre-petition duly perfected lien over the Debtor's property in the Registry of Property, therefore it is an unsecured creditor; and (vi) the court should not resort to equitable remedies, such as the constructive trust requested, as the ESJ HOA may have other available remedies at law.

On February 16, 2023, the Debtor filed its *Answer to Motion to Prohibit Use of Council's Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and Cash Collateral as Adequate Protection* (dkt #514) by which it contends that: (i) the ESJ HOA refers to Debtor's unauthorized use of its cash collateral without identifying what it consists of as there are no existing loans from the ESJ HOA to Debtor by which the ESJ HOA may have a perfected security interest on Debtor's cash collateral: (ii) the ESJ HOA does not have a security interest in any cash collateral as defined by 11 U.S.C. §363(a); (iii) the ESJ HOA does not have an interest in the insurance proceeds nor do they constitute its cash collateral; (iv) Debtor is not using any of the ESJ HOA's property nor any of its alleged cash collateral because there is none; (v) any resort fees charged by the Debtor as to its units or any payments received by Debtor for the use of the units or its intervals in any unit at the condominium belong to Debtor and are part of its normal operations and do not constitute community fees and/or cash collateral belonging to any third party; and (vi) In re Builders Group & Dev. Corp., 502 B.R. 95, 112 (Bankr. D.P.R. 2013), is inapplicable because the Debtor has not assigned any rents to the ESJ HOA.

On February 22, 2023, the court concluded that it needed further information to place the court in a position to decide if and to what extent the claimed expenses should be all owed as administrative expenses and ordered ESJ HOA to reply to the court's inquiries regarding its request for administrative expenses pursuant to 11 U.S.C. §503(b) (dkt #526). On March 15, 2023, ESJ HOA filed a *Motion to Withdraw "Motion for Entry of Order Allowing and Compelling Payment of HOA's Administrative Expense Claim Pursuant to 11 U.S.C. §503"* (dkt #481) and the same was granted on March 20, 2023 (dkt #577, 588). ESJ HOA filed two (2) motions requesting extension of time to submit the breakdown of the 147 units in which the Debtor owns or rents a Premises Interest for purposes of calculating HOA's post-petition administrative expense claim for such units (dkt #s 578 & 643). On May 9, 2023, ESJ HOA filed its *Second Motion in Compliance of Order Dated February 23, 2023 (dkt #526)* (dkt #688).

On April 14, 2023, the court ordered ESJ HOA to clarify whether there was a difference in the remedies requested in the *Urgent Motion for Adequate Protection under Section 363(e) and for Reduction of Response Time* filed on October 28, 2022 (dkt #225) and those requested in the amended complaint filed in adversary proceeding 22-00072 (Adversary Proceeding 22-00072, dkt #17), and the purpose for requesting such through different procedural vehicles (dkt #626). On April 28, 2023, ESJ HOA filed a *Motion in Compliance with Court Order (dkt #626)* in which the ESJ HOA informed that the amended complaint in adversary proceeding incorporates the remedies sought in docket no. 225, and requested to withdraw docket no. 225 to avoid duplicative procedural vehicles (dkt #663).

On April 18, 2023, the Debtor file a *Motion for Continuance of Pretrial Conference* regarding the following matters: (i) *Motion for Allowance of Administrative Expense Claim* filed by ESJ Towers Condominium Homeowners Association (dkt #123); (ii) Debtor's *Opposition to HOA's Motion for Allowance and Payment of Administrative Expense Claim* (dkt #237); and (iii) ESJ *HOA's Reply to "Opposition to Creditor ESJ HOA's Motion for Allowance and Payment of Administrative Expense Claim"* (dkt #272-1) (dkt #635). The same was granted and the hearing

-6-

on the above matter was continued to May 12, 2023. (dkt # 639). On May 10, 2023, the Debtor and ESJ HOA filed a *Joint Motion for Continuance of Pretrial Conference* to be able to comply with the court's February 22, 2023 Order (dkt #526), to attempt to resolve any controversy regarding the intervals, and inform the court whether there are still pending matters to be resolved, and thus a pretrial conference is warranted (dkt #689).  The same was granted (dkt #692). On June 8, 2023, the Debtor and ESJ HOA filed a *Joint Motion in Compliance with Court Order (dkt #692) Informing Status of the Negotiations for the Monthly Calculation of the Intervals and for Additional Time* (dkt #808), which was granted on June 12, 2023 (dkt #815). Subsequently, the ESJ HOA filed three (3) *Motions Requesting Extension of Time to Submit Status Report of the Negotiations for the Calculation of the Monthly Maintenance Fees for the Premises Interests (Intervals) Used by Debtor* (dkt #s 845, 846, 879, 880, 950).  The parties have until August 11, 2023, to inform the court the status of the negotiations of the monthly calculation of the Intervals (dkt #982).

On May 1, 2023, ESJ HOA filed an *Omnibus Reply of the Council to Oppositions to Motion to Prohibit Use of the Council's Property and Cash Collateral* (the "*Omnibus Reply*", dkt #667). On May 26, 2023, Oriental filed a *Sur Reply to "Omnibus Reply of the Council to Oppositions to Motion to Prohibit the Use of Council's Property and Cash Collateral."* (dkt #763). On June 8, 2023, the Debtor filed an *Answer to the Council of Homeowners of the ESJ Towers Condominium's Omnibus Reply to Oppositions to Motion to Prohibit Use of the Council's Property and Cash Collateral* (dkt #806), contending that, in the *Omnibus Reply*, the ESJ HOA fails to evince having any lien or perfected security interest on Debtor's property, including the insurance proceeds or evidence that Debtor has improperly collected or retained maintenance fees from deeded vacation owners, issues which have been duplicated by the adversary proceedings and various contested matters referenced in this court's April 14, 2023 Order (dkt #626).

Position of the Parties

A.      *The ESJ HOA / Council*

The ESJ HOA contends that, "[t]he relief requested in this Cash Collateral Motion is urgently needed to protect the Council's interests in its property and cash collateral, before such property and cash collateral vanishes as a result of misuse, misappropriation, or diversion to third parties" (dkt #435, p. 3). The ESJ HOA argues that pursuant to the Master Deed of the Condominium, the ESJ HOA is the owner of the Property other than the Units and Limited Common Elements, and that all fees or funds collected by the Debtor that pertain to the maintenance of the common elements are the ESJ HOA's property, over which the Debtor has no interests or rights (dkt #435, pgs. 21-22, Exhibit 1, pg. 25). "Therefore, in accordance with the Master Deed, the Debtor does not have any interest or rights in the collection of funds to repair or replace the common elements or limited common elements and the Council has exclusive rights to receive all of the amounts included in the claim against Chubb for the repair or replacement of the common elements based upon the insurance policy issued by Chubb to insure the ESJ Towers Condominium" (dkt #667, pgs. 17-18). The ESJ HOA also contends that, "… prior to the termination of the management agreement, as a manager of the ESJ Towers Condominium, the Debtor would collect maintenance fees for the benefit of the Council, including requesting and

executing the statutory lien against Unit Interests[1] or Premises Interests[2] for failure to pay the maintenance fees that belong to the Council" (dkt #435, p. 30).

The ESJ HOA also claims that the "resort fee" the Debtor charges its guests for the use of the Unit Interests or Premises Interests is part of the Council's cash collateral because it is a charge "… that corresponds to the guest's use of the common elements of the ESJ Towers Condominium and/or corresponds to that unit's maintenance dues and/or the Premises Common Expense Share that the Council charges all Premise Interests for the maintenance, repair, replacement, cleaning, sanitation, management, operation and use of the Premises Interests corresponding to said Unit" (dkt #435, p. 38). Further, the ESJ HOA argues that both it and the Debtor are principal insured parties to the insurance policy at issue, the ESJ HOA has a proof of claim and a pending adversary proceeding regarding the Debtor's receipt of all the advances and partial payments provided by Chubb Insurance Company of Puerto Rico ("Chubb") and Attenure Holdings Trust 1 ("Attenure") in connection with the insurance proceeds and of said funds having been consumed by the Debtor

---

[1] A "**Unit Interest**" is defined in the Master Deed as the "the entire interest in the fee simple absolute of a Unit and the Common Interest appurtenant thereto. As used in this Deed and the Condominium Documents, the Declarant shall be deemed to be the owner of a Unit Interest as to any Unit in which no Premises Interests shall have been conveyed except that it shall pay Common Expenses as incurred and not at the time of assessment" (dkt #435-1, Master Deed, p. 9).

A "**Unit Owner**" is defined in the Master Deed as the "each Person owning a Premises or Unit Interest in a Unit. As used in this Deed and the Condominium Documents, 'Unit Owner' includes the Declarant with respect to all Units in which the Declarant owns or retains a Premises Interest except that it shall pay Common Expenses as incurred and not at the time of assessment" (dkt #435-1, Master Deed, p. 9).

The court also notes that: the "**Declarant**" or "**Grantor**" is defined in the Master Deed as the ESJ Towers, Inc., and the "**Council**" is defined in the Master Deed as "the unincorporated association of all Unit Owners having the powers and duties set forth in the Act and the Condominium Documents" (dkt #435-1, Master Deed, p. 5). Moreover, the first Article of the Master Deed states that, "[t]he **GRANTOR** is the owner in fee simple, subject to certain liens, encumbrances and easements set forth in Article Second of this Deed, of the property which is described in Article Second of this Deed" (dkt #435, pgs. 1-2).

[2] A "**Premise Interest**" is defined in the Master Deed as "the undivided interest of a Unit Owner in the fee simple absolute of a Unit and the Common Interest and Limited Common Interest appurtenant thereto, determined by reference to the Interval or Intervals held by such Unit Owner and as set forth in Exhibit D hereof. The size of each Unit Owner's Premises Interest, expressed as a percentage of the aggregate of all interests in a Unit, shall be equal to such Unit Owner's Unit Common Expense Share" (dkt #435-1, Master Deed, p. 7).

without providing any part of said funds to the ESJ HOA. The ESJ HOA has not consented to the Debtor's use of the ESJ HOA's property, including the Irma/Maria insurance proceeds. "The Council has always maintained the position that the Debtor may have received more than the Debtor was entitled to receive from the Insurance Proceeds. Therefore, the Council has an interest over the Debtor's interest in the Insurance Proceeds, to the extent that the Debtor may have an interest in some of those insurance proceeds, in which case, they constitute the Council's cash collateral. If the Debtor no longer has any remaining interest in the Insurance Proceeds, then the entire Insurance Proceeds constitutes the Council's Property rather than having the Debtor's Interest constitute the Council's cash collateral" (dkt #435, p. 24).

The ESJ HOA also contends that the constructive trust doctrine is applicable in the instant case because the Management Agreement was cancelled effective May 31, 2022, before the filing of the bankruptcy petition. Therefore, the Management Agreement cannot authorize the Debtor or third parties to appropriate themselves of the ESJ HOA's property. However, "… even if the action and/or inaction of the Debtor and third parties were covered by the Management Agreement, they would constitute a breach of duty under the terms of said Agreement" (dkt #667, p. 12).

B.     *Oriental Bank*

Oriental contends that it has a duly perfected security interest in the insurance proceeds under the terms of a certain Security Agreement, Pledge and Assignment, dated May 4, 2018, as amended (dkt #491-2, Section 2(iv), pgs. 2-3; Section 15, pgs. 16-17) and that the insurance proceeds constitute collateral under the terms of the First Credit Agreement, as amended, and the Second Credit Agreement dated May 4, 3018 (dkt #491-1, Credit Agreement, pgs. 67-68 & 231-232). Moreover, Oriental contends that the insurance proceeds also constitute "Mortgaged Property", as such term is defined pursuant to two (2) Deeds of Constitution of Mortgages, both dated June 11, 2015. Oriental has a lien over the insurance proceeds for any damages suffered by Oriental's Mortgaged Property collateral or any part thereof (dkt #491-3, Mortgage Deeds, Fifth Clause, pgs. 6-7 & 111-112).  The insurance proceeds serve as collateral to those certain mortgage

-10-

notes and negotiable instruments and promissory notes that were pledged as security collateral to the loan granted to Debtor by Oriental pursuant to the Credit Agreement. Thus, Oriental opposes the ESJ HOA's request to the extent that in any way infringes upon Oriental's liens or interest in the claims or the insurance proceeds (dkt #491, p. 5).

Oriental asserts that the court should abstain from exercising its jurisdiction over moot controversies and non-core matters. Such as, paragraph (b) of the ESJ HOA's prayer for relief, namely, requesting an Order of the court "directing the deeded Full Owners and deeded Vacation Owners to pay directly to the Council any amount due to them with regards to their ownership of any Unit Interest(s), Premise Interest(s) or interval(s) corresponding to ESJ Towers Condominium" (dkt #435, pp. 49-50, 52-54). The Debtor in its *Objection to Amended Urgent Motion to Inform the Court and for Expeditious Action* disclosed that, "Debtor's current administration will not bill either deeded unit owners or deeded vacation owners (VO's) which is HOA's function" (dkt #473, p. 4, ¶ 9). Thus, the ESJ HOA's request has turned moot.

Oriental contends that the ESJ HOA has not meet its burden of proof that it holds a valid security interest in this case. The ESJ HOA has not evinced that it has a pre-petition duly recorded lien over Debtor's property in the Property Registry. Moreover, this court in In re Ibañez, 2022 WL 256776, 2022 Bankr. Lexis 212 (Bankr. D.P.R. 2022), held that neither the repealed Law No. 104, as amended, nor the recent enacted Law No. 129 may be interpreted as creating a statutory lien considering the determination of the Supreme Court of Puerto Rico. Therefore, common expense debts are only secured as soon as they are registered in the Puerto Rico Property Registry, albeit the continuous obligation of an owner to contribute as required by law. ESJ HOA is an unsecured creditor with no interest in property and thus, there is no express statutory requirement that holders of unsecured claims be provided adequate protection. Moreover, the adequate protection provision of 11 U.S.C. §361 protects only secured creditors.

Lastly, Oriental argues that the court should not resort to equitable remedies, such as the constructive trust requested, since ESJ HOA may have other available remedies at law. The ESJ

-11-

HOA in its prayer for relief, seeks the "imposi[tion] of a constructive trust on any Council Property and/or Cash Collateral, or proceeds of any Council Property and/or Cash Collateral that has been diverted to any person or bank account as a result of any diversion of such property or cash collateral or of any other funds belonging to the Council over which the Debtor has no rights or title" (dkt #435, p. 50). Many bankruptcy courts refuse to recognize constructive trusts based on a creditor's claim of entitlement to one unless state law has impressed property with a constructive trust prior to its entry into bankruptcy. Pursuant to Puerto Rico jurisprudence, a constructive trust doctrine is only applicable to "situations not foreseen by strict law" (dkt #491, p. 14). Oriental argues that, "this is not the situation in the instant case, as the HOA's claims are based on the Debtor's alleged breach of the Management Agreement, for which HOA may have a remedy under Puerto Rico contract law. In this case, no pre-petition constructive trust has been alleged or demonstrated. Hence, the court should not resort to equitable remedies, such as imposing a constructive trust, [since] the HOA may have other available remedies at law" (dkt #491, p. 15).

C.      *The Debtor*

The Debtor contends that the ESJ HOA refers to "Debtor's unauthorized use of its cash collateral, without identifying what it consists of as there are no existing loans from HOA to Debtor in reference to which HOA may have a perfected security interest on Debtor's cash collateral." (dkt #514, p. 3, ¶8). The ESJ HOA does not have a lien or a perfected security interest on Debtor's property pursuant to 11 U.S.C. §363(a). Moreover, Debtor denies that the ESJ HOA is the owner of the common elements nor of any other property referred to therein and admits that in absence of a duly appointed manager or administrator it is within the ESJ HOA's scope of duties as administrator to collect maintenance fees from unit owners and vacation owners within, but without any proprietary interest thereon. The Debtor denies that it is currently collecting such fees and that it intends to pay the maintenance fees corresponding to the units deeded under its name or in which it has an interest. The Debtor also denies that it holds any property or areas belonging to ESJ HOA, as they were turned over in good order as ordered by the court. As to the insurance

proceeds, the Debtor avers that they were received by the Debtor and were invested in the Condominium. Moreover, the Debtor denies that any future interest in the insurance proceeds belong to the ESJ HOA or constitutes its cash collateral. The Debtor further contends that any resort fees charged by the Debtor pertaining to its units or any payments received by the Debtor for the use of its units or intervals in any unit in the Condominium belong to Debtor and are part of the Debtor's normal operations and do not constitute community fees and/or cash collateral belonging to any third party. Debtor asserts that Builders Group, *supra*, is inapplicable to the instant case because the Debtor has not assigned any rents to ESJ HOA, which has the burden of proof and has not established otherwise.

The Debtor further asserts that all the issues raised again by the ESJ HOA in the *Omnibus Reply* are duplicative of the issues raised in the two adversary proceedings and the contested matters.

Legal Issue

The key issue that needs to be addressed first is whether the ESJ HOA has a validly perfected security interest over the Debtor's real estate property and, consequently, whether the proceeds from the maintenance and resort fees and the insurance proceeds constitute "cash collateral" under Section 363(a) of the Bankruptcy Code, 11 U.S.C. §363(a). Both the Debtor and Oriental contend that the ESJ HOA does not have a validly perfected security interest over the Debtor's real estate property and thus, is an unsecured creditor.

Applicable Law and Analysis

A. *Standards to Prohibit the Use of Cash Collateral*

Pursuant to Section 363(c)(1) of the Bankruptcy Code, a debtor in possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §363(c)(1). However, a debtor in possession is

prohibited from using cash collateral in the ordinary course of business absent authorization by the court or consent from the entity that has an interest in the collateral. See 11 U.S.C. §363(c)(2). Cash collateral consists of "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property and the fees, charges, accounts of other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title". 11 U.S.C. § 363(a).

As a general rule, post-petition revenue is not considered cash collateral.  "Section 552 of the Bankruptcy Code governs the extent of valid security agreements over property acquired post-petition. The general rule is that property acquired post-petition is not subject to a pre-petition security agreement. 11 U.S.C. § 552(a). However, the general rule is subject to exceptions set forth in section 552(b), such as: proceeds, products, offspring, rents, profits, or hotel revenues generated from the original collateral. The main purpose of the general rule in section 552(a) is to facilitate debtor's fresh start, rehabilitation, and reorganization. The exceptions in section 552(b) intend to balance debtor's rights with the secured creditors' right to preserve their interest in the collateral over a valid pre-petition lien. Feeney, Williamson, Stepan, Bankruptcy Law Manual, 5th Edition, 2022, §6:52." In re Las Martas, Inc. (Vaquería Las Martas), 650 B.R. 359, 370-371 (Bankr. D.P.R. 2023).  In addition, Section 552(b)(2) provides a similar exception for "amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties." 11 U.S.C. §552(b)(2). See also United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 374 (1988) ("Section 522(b) sets forth an exception allowing postpetition 'proceeds, product, offspring, rents, or profits' of the collateral to be covered only if … the interest has been perfected under 'applicable nonbankruptcy law.' ").

The provisions of Sections 363(c)(2) and 552(b) protect a creditor's collateral from being used by a debtor post-petition if the creditor's security interest extends to one of the categories set out in §552(b). Consequently, a creditor is not entitled to the protections of Sections 363(c)(2) and 363(e) unless its security interest satisfies Section 552(b). The ESJ HOA has the burden of establishing the existence and the extent of its interest in the property it claims as cash collateral, and that such interest falls under one of the exceptions outlined in Section 552(b) for post-petition proceeds. See 11 U.S.C. §§ 363(p)(2), 552(b).

The court notes that the ESJ HOA did not argue that its alleged security interest in the post-petition monthly maintenance fees, resort fees, and the insurance proceeds falls under the enumerated exceptions of Section 552(b).

B.       *Security Interest Under 11 U.S.C. §363(a) Must be Perfected*

A prerequisite for a creditor to request cash collateral pursuant to 11 U.S.C. §363(a) is that a creditor be "an entity [with] an interest" in the collateral. 11 U.S.C. §363(a). The Bankruptcy Code does not provide a definition of what it means for an entity to have an "interest." "Cash collateral does not include noncash assets that can be converted to cash, no matter how easily. Cash collateral also does not include cash to which the creditor's security interest has not attached or is not perfected." Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy ¶363.03[3] (16th ed. 2023). Notwithstanding, an entity may have an interest that is not a security interest in cash or cash equivalents. "The language of section 363(a) is intentionally broad to deal with situations in which an entity has an interest, other than a security interest, in the cash or cash equivalents. To illustrate, a bank with a right of setoff is treated as the holder of a secured claim under section 506(a) notwithstanding that it does not have a security interest. Under section 363(a), the deposit account that is subject to the setoff right is considered cash collateral." Id.

"When dealing with security interests, however, most courts find that only an entity with a *perfected* security interest in the subject collateral can have an 'interest' within the meaning of §363(a)." In re Shree Meldikrupa, Inc., 2016 WL 235205, *5, 2016 Bankr. Lexis 159, *15 (Bankr.

S.D. Ga., 2016), citing In re Wright Group, 443 B.R. 795, 799 (Bankr. N.D. Ind. 2011) (italics original). In reaching this conclusion, several of these courts have reasoned that for a creditor to have an interest in cash collateral it must have an enforceable security interest that could not be avoided by the debtor pursuant to 11 U.S.C. §544. See e.g., In re Wright Group, 443 B.R. at 806 ("Absent a perfected security interest, the creditor's interest is avoidable by the debtor utilizing avoidance powers in Chapter 5 of the Bankruptcy Code, and the issue of cash collateral becomes moot").

Consequently, a creditor must have properly perfected its security interest in the debtor's property and its proceeds to have an interest in the cash collateral pursuant to Section 363. If a creditor has a properly perfected interest in property, then it is entitled to request adequate protection under Section 361 to protect its property interest. "In effect, protection is required only for the value of an entity's interest in the property. If an entity's claim exceeds the value of its interest in property, only the interest is entitled to protection; the remainder of the claim is unsecured and does not give rise to an interest in property that requires protection. Similarly, an entity is not entitled to protection if its interest is somehow defective under nonbankruptcy law." Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy ¶361.02[2] (16th ed. 2023).

The ESJ HOA filed amended proof of claim number 98-2 in the secured amount of $4,364,980.60, on account of maintenance fees and insurance assessment. The basis for perfection of proof of claim number 98-2 is disclosed as a statutory lien pursuant to Article 60 of the Puerto Rico Condominium Act, 31 L.P.R.A. §1923e. It is the only secured claim filed by the ESJ HOA. See e.g., 99-1, 100-2, 101-2 and 102-1.

This court previously denied the ESJ HOA's request for relief from the automatic stay in In re ESJ Towers, Inc., 2023 WL 2245837, 2023 Bankr. Lexis 515 (Bankr. D.P.R. 2023), holding that the ESJ HOA did not have a statutory lien and, consequently, did not have a security interest over 124 units whose liens were not registered. This court further concluded that the ESJ HOA was not entitled to adequate protection pursuant to 11 U.S.C. §361 because it was an unsecured

-16-

claimant. The court's reasoning for establishing that ESJ HOA did not have a security interest over the 124 units was the following:

> ESJ HOA contends that relief from the automatic stay is warranted due to lack of adequate protection of an interest in property of ESJ HOA. ESJ HOA argues that Article 60 of the amended Puerto Rico Horizontal Property Act creates a statutory lien, meaning that the lien does not have to be registered in the Property Registry as required by the previous Puerto Rico Horizontal Property law. ESJ HOA's position is that it has a security interest on the 124 units based on these statutory liens. This Court in In re Padilla Ibanez, 2022 Bankr. LEXIS 212, *25; 2022 WL 256776 (Bankr. D.P.R. 212) held that neither the repealed law No. 104, as amended, nor the recent enacted Puerto Rico Horizontal Property Act may be interpreted as creating a statutory lien in light of the determinations by the Puerto Rico Supreme Court. Common expense debts are only secured as soon as they are registered in the Property Registry, albeit the continuous obligation of an owner to contribute as required by law. "The lien contemplated by Article 41[3] of the Condominium Act is not self-perfecting; rather, in order to be perfected and for it to encumber the apartment, the lien must be recorded in the Registry of Property." Hernandez v. Consejo de Titulares del Condominio Villas de Punta Guilarte (In re Hernandez), 2014 Bankr. Lexis 3036, *11; 2014 WL 3534703 (Bankr. D.P.R. 2014).

> This court's legal reasoning and analysis for its holding was as follows:

> "On August 16th 2020, the new Puerto Rico Horizontal Property Act was enacted with the purpose of updating the norms that regulate cohabitation in condominiums. The law derogated the previous Law No. 104 dated June 19, 1958, and all its amendments. Pursuant to the legislative explanatory memorandum, the new law attempts to harmonize the condominium regulation with the current times and the different judicial interpretations of the law issued by the Supreme Court of Puerto Rico.

> As pertinent to our controversy, the new Act of 2020 states:

> 'Section 60.- Liability of Owner for Common Expenses, Lien.

> An apartment owner's liability for his percentage of interest in the common expenses shall constitute a lien on said apartment. Therefore, after the first sale, the voluntary acquirer of an apartment shall be jointly and severally liable with the transferor for the payment of any unpaid amounts by the transferor, in accordance with Section 59, up to the time of the conveyance, without prejudice to the right of the acquirer to recover from the transferor those amounts paid as a joint debtor. However, an involuntary acquirer shall only be liable for debts on account of unpaid common expenses accrued during the six (6)-month period prior to the time of

---

[3] Article 41 is the equivalent of Article 60 in the new Horizontal Property Law of 2020.

-17-

acquisition of the property, except for any amounts pertaining to late fees, assessments, interests, and penalties attributable to the owner, and shall include the current balance accrued from the acquisition of said property by the involuntary acquirer.

Said liability shall be due and payable from whomever is the owner of the property comprising the apartment, even if it has not been yet segregated and recorded as a filial estate in the Property Registry, or alienated in favor of any person. Any financial institution that provides interim financing to a person for the construction of apartments and common elements to be submitted to the Horizontal Property Regime and obtains title to the property as a result of a foreclosure or by deed in lieu of foreclosure shall not be deemed to be a Developer, as Interim Administrator, or a declarant of the regime, pursuant to the provisions of this Act; provided, that the financial institution does not exceed the usual duties of a creditor in protecting its security interest, in accordance with the commercial practices followed by financial institutions providing interim construction financing.

Section 61.- Exceptions for Priority of Liens Against Owners.

The lien against any owner on account of an apartment owner's liability for his percentage of interest in the common expenses, referred to in Section 59 of this Act, shall have priority over any other lien of whatever nature, except for the following: a) Liens in favor of the Government of Puerto Rico and the respective municipality for the sums of the last five (5) annual tax assessments and the current tax assessment, overdue and unpaid on the apartment.

b) For the insurance premium for the last two (2) years of the apartment, or the total property, as the case may be, and in the case of common insurance, for the last two (2) dividends distributed.

c) Mortgages recorded in the Property Registry."

New Section 60 essentially kept the same language of its predecessor Article 41. Specifically, the law states that an apartment owner's liability for his percentage of interest in the common expenses shall constitute a "lien" on said apartment. However, predecessor Article 41 specifically stated that it would become a lien *"as soon as it is registered in the Property Registry"*. Although the phrase was part of the last amended Article 41, it wasn't always included in the section.

The initial Horizontal Property Law, Law No. 104, was enacted on June 25, 1958. 31 L.P.R.A. 1293 et seq, and was amended multiple times throughout the year, until its recent derogation in 2020. Articles 41 and 39 have been thoroughly addressed by the Supreme Court of Puerto Rico in the development of the figure of the "involuntary acquirer". See Condominio First Fed. Sav. v. LSREF2 Island Holdings LTD, 2019 TSPR 128, 202 P.R. Dec. 934; Coop. de Ahorro y Crédito Oriental v.

Consejo de Titulares Cond., 2016 TSPR 79, 195 P.R. Dec. 330; Vázquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R., 18 P.R. Offic. Trans. 930, 118 P.R. Dec. 806 (1987).

Initially, Article 41 read as follows:

'The acquirer of an apartment shall be jointly and severally liable with the conveyer for the amounts owing by the latter under Section 39 of this Act up to the time of the conveyance, without prejudice to the acquirer's right to recover from the other party the amounts paid by him as such joint debtor. 31 L.P.R.A. § 1293e.'

See Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977)

Furthermore, Article 40 stated:

'The credit against any co-owner for his share in the expenses to which Section 39 of this Act refers shall have preference over any other credits of whatever nature but the following:

(a) Credits in favor of the Commonwealth and the corresponding municipality for the taxes of the last five annual assessments and the unpaid current one, overdue and unpaid on the apartment.

(b) For two years premium on the insurance of the apartment, or of the whole property, as the case may be, and in the case of mutual insurance, for the last two dividends distributed.

(c) Mortgage credits recorded in the Registry of Property.'

See Ass'n of Co-Owners v. Naveira , 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977)[.]

The purpose of article 41 was to turn the acquirer into a surety of the debtor. *Id.* At that point, no reference to a "lien" was part of Article 41. The reference to a "lien" was included to Article 41 through Act No. 157 of 1976, which amended Law No. 104 and stated:

Article 41

The obligation of the co-owner of an apartment for his proportionate share in the common expenses shall constitute a lien on said apartment. Therefore, the voluntary acquirer of an apartment shall be jointly liable with the conveyer for the amounts owing by the latter, pursuant to Section 39, up to the time of the conveyance,

-19-

without prejudice to the acquirer's right to recover from the other party the amounts paid by him as such joint debtor.

The aforesaid obligation shall be enforceable on whoever may be the owner of the property containing the apartment, even if the same has not been segregated and recorded as a filial property in the Registry of Property, or alienated in favor of any person. (31 L.P.R.A. § 1293e.)

Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977)[.]

The Naveira Court expressed that: "[a]ct No. 157 of June 4, 1976, introduced a fundamental amendment to art. 41 upon ordering that "the obligation of the co-owner of an apartment for his proportionate share in the common expenses shall constitute a lien on said apartment." This provision is tantamount to declaring that a co-owner's liability for common expenses always follows the title to his apartment even with regard to expenses accrued prior to its purchase." Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88, 6 P.R. Offic. Trans. 119 (1977).

However, in Vazquez Morales v. Caguas Fed. Sav. & Loan Assoc. of P.R., 118 P.R. Dec. 806, 18 P.R. Offic. Trans. 930 (1987), the court clarified the use of the term lien on Article 41:

'The amendment introduced by Act No. 157, in no way modified or eliminated the preference of credits provided in sec. 40 of the Act, 31 L.P.R.A. § 1293d.

Commenting on the amendment to sec. 41 of the Horizontal Property Act, Dr. Alberto Ferrer recommends "the elimination of the confusing term 'lien' in referring to debts involving common expenses; or the creation--if desired--of a new kind of 'Legal Mortgage,' which should be done in very clear and specific terms.' A. Ferrer, Necesidad de reformar la Ley de Propiedad Horizontal de Puerto Rico 547 (November 1977).

On the other hand, the principles of publicity and specialty of the Registry of Property--sees. 101 and 87, 30 L.P.R.A. §§ 2351 and 2308--contained in the 1979 Mortgage Law, Act No. 198, August 8, 1979, as amended, do not admit the existence of secret liens so, in order to become effective, the "lien" mentioned in sec. 41 must be recorded in the Registry of Property. If the lien is recorded in the Registry of Property, it would be subject to the provisions of Civil Code sec. 1827 (31 L.P.R.A. § 5212), and of Mortgage Law sec. 136 (30 L.P.R.A. § 2460), which cancel the lien on the real property if the proceeds of the sale are not sufficient to pay for the preferred credits.

Vazquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R., 18 P.R. Offic. Trans. 930, 118 P.R. Dec. 806 (1987).

-20-

The Supreme Court's expressions were consistent with its determinations at that time: the voluntarily acquirer was jointly and severally liable with the conveyer for the amounts owing up to the time of the conveyance. However, the involuntary acquirer, or "those who become owners of [] apartments by exercising the preferred credit established in sub-divisions (a), (b), and (c) of art. 40 (31 L.P.R.A. 1293d) are "involuntary" acquirers and therefore, they are exempt from the liability for the common expenses of the condominium." Id. Throughout the years the definition of who is an involuntary acquirer has been developed by the Supreme Court of Puerto Rico, always upon the same query: is it responsible or not for paying accrued common expenses?

Article 41 was once more amended by Law 43-1996, through which the figure of the involuntary acquirer was incorporated to the law; and established that it was to be responsible for up to three (3) accrued common expense payments at the time of conveyance. See Asociacion de Condomines Galeria Profesional v. Condado 3Cr2, LLC, 2021 PR App. LEXIS 603 *13; 2021 WL 1561320 (2021).

Through a further amendment of article 41 in year 2003, the legislature imposed the responsibility to the involuntary acquirer for up to six (6) accrued common expense payments at the time of conveyance. Act No. 103 of 2003. Id. The legislature additionally included the phrase "as *soon as it is registered in the Property Registry*". With the inclusion of the phrase "as *soon as it is registered in the Property Registry*" the legislature incorporated the Supreme Court's ruling in Vazquez Morales. The last amendment to Article 41 was made through Law No. 119-2016 to further delimit the categorization of an involuntary acquirer.

Upon the enactment of the new Horizontal Property Law of 2020, Law No. 104 dated June 19, 1958; as amended, was repealed. However, as stated before, Art. 61[4] retained the same overall language as previous amended Article 41, although the phrase *"as soon as it is registered in the Property Registry"* was left out of new Article 61[5]. However, the interpretation of the Supreme Court of Puerto Rico in considering the common expenses as "liens" was regarding an Article 41 which did not included the phrase "...*as soon as it is registered in the Property Registry*". If the legislature intended the creation of a "legal mortgage" or statutory lien, it has had ample opportunities to do so after the Vazquez Morales expression and should have stated it in clear terms in the new enacted law, as suggested by the Supreme Court of Puerto Rico.

In re Padilla Ibanez, 2022 Bankr. LEXIS 212, at *16-24 (Bankr. D.P.R. 2022).'

In re ESJ Towers, Inc., 2023 WL 2245837, *7-10, 2023 Bankr. Lexis 515, *21-30.

---

[4] It is supposed to reference Article 60 of the new Puerto Rico Horizontal Property Act.
[5] It is supposed to reference Article 60 of the new Puerto Rico Horizontal Property Act.

The court finds that the ESJ HOA failed to evince that it has a perfected security interest in the subject collateral pursuant to 11 U.S.C. §363(p). Therefore, this court holds that the ESJ HOA does not have an 'interest' within the meaning of Section 363(a), and thus is not entitled to adequate protection pursuant to 11 U.S.C. §361. The court concludes that the ESJ HOA is an unsecured claimant as to the monthly maintenance fees, resort fees and insurance proceeds.

Conclusion

In view of the foregoing, the ESJ HOA's *Motion to Prohibit the Use of the Council's Property and Cash Collateral and for the Entry of an Order to Segregate Such Property and/or Cash Collateral as Adequate Protection* (dkt #435) is denied.

SO ORDERED.

In San Juan, Puerto Rico, this 9th day of August, 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-22-