**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**

IN RE:

**ESJ TOWERS, INC.**

**d/b/a MARE ST. CLAIR HOTEL**

**DEBTOR**

**CASE NO.  22-01676-ESL**

**CHAPTER 11**

**AMENDED DISCLOSURE STATEMENT**
**FOR**
**ESJ TOWERS, INC.**

CHARLES A. CUPRILL P.S.C.
LAW OFFICES
356 Fortaleza Street
Second Floor
San Juan, PR  00901
Tel.: (787) 977–0515
E–mail: ccuprill@cuprill.com

# INDEX

I.    INTRODUCTION ........................................................................... 4

II.   SUMMARY OF THE PLAN ........................................................... 5

III.  INFORMATION ABOUT THE REORGANIZATION PROCESS......................... 10
3.1 Purpose of a Disclosure Statement ......................................... 10
3.2 Voting Procedure ................................................................... 11
3.3 Ballots.................................................................................. 11
3.4 The Confirmation Hearing....................................................... 12
3.5 Acceptances Necessary to Confirm the Plan............................. 13
3.6 Confirmation of the Plan without the Necessary Acceptances ..... 14

IV.   DESCRIPTION OF THE DEBTOR AND EVENTS PRECEDING
THE FILING OF DEBTOR'S CHAPTER 11 PETITION ................................. 14
4.1 HISTORICAL OVERVIEW AND EVENTS PRECEDING DEBTOR'S
CHAPTER 11 FILING .............................................................. 14
4.2 Debtor's Post–Petition Endeavors .......................................... 17

V.    CLAIMS AGAINST DEBTOR AND ITS ASSETS ....................................... 19
5.1 Claims Against Debtor ............................................................ 19
5.2 Objections to Claims .............................................................. 20

VI.   DESCRIPTION OF THE PLAN.............................................................. 20
6.1 Unclassified Claims ................................................................ 21
6.2 Administrative Expense Claims ............................................... 22
6.3 Professional Fee Claims.......................................................... 22
6.4 Priority Tax Claims ................................................................ 22
6.5 Classes of Claims and Equity Interest ..................................... 23
6.6 Treatment of Claims and Interests ......................................... 24
6.7 Means for Execution of the Plan ............................................. 28
6.8 Debtor's Post Confirmation Management.................................. 28
6.9 Executory Contracts and Unexpired Leases ............................. 28

VII.  LIQUIDATION AND FINANCIAL ANALYSIS ............................................ 29
7.1 Best Interest of Creditors and Comparison with Chapter 7

Liquidation .............................................................. 29

7.2 Feasibility of the Plan............................................... 30

   **A.**    ***Financial Projections*** ................................................. *31*

   **B.**    ***Funds and Assets Sufficient for Payments Under the Plan***.................. *31*

7.3 Pending Litigation and Other Liabilities .................................. 32

VIII. CHAPTER 11 PROCEEDINGS .................................................. 34

   8.1 Determination of Claims ........................................ 34

IX.   ALTERNATIVES TO THE PLAN .............................................. 35

   **A.**    ***Liquidation Under Chapter 7***................................................ *35*

   **B.**    ***Dismissal of the Case*** ..................................................... *36*

   **C.**    ***Alternative Plan of Reorganization***.......................................... *36*

X.    TAX EFFECTS .......................................................... 36

XI.   CONCLUSION........................................................... 36

## LIST OF EXHIBITS

Exhibits A–1 to A-4 ................................................................. 13

Exhibit B   –   Order Approving Disclosure Statement...................................... 15

Exhibit C   -   Asset Purchase Agreement.................................................21

Exhibit D   –   Summary of Claims and Plan Payments........................................ 22

Exhibit E   –   Summary of Priority Tax Claims ............................................. 24

Exhibit F   –   Sales Proceeds Distributions ........................................ 30, 34

Exhibit G   –   Executory Contracts ..................................................... 30

Exhibit H   –   Liquidation Analysis ..................................................... 32

Exhibit I   –   Debtor's Audited Financial Statements as of May 31, 2021 ....................... 34

Exhibit J   –   Monthly Operating Report for the Month ended September 30, 2023

Exhibit K   –   Summary of Operating Reports September 30, 2023 ................................ 34

# I.  **INTRODUCTION**

Pursuant to Section 1125 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), ESJ Towers, Inc. ("Debtor"), Debtor and Debtor−in−possession in the above captioned case, provides this amended disclosure statement (the "Amended Disclosure Statement") to all its known creditors and parties in interest. The purpose of the Amended Disclosure Statement is to provide such information as Debtor believes may be deemed necessary for its creditors to make an informed decision in exercising their rights to vote on Debtor's Amended Plan of Reorganization (the "Plan") dated as of the date of the Amended Disclosure Statement. The Plan is being filed with the Bankruptcy Court simultaneously herewith.

Debtor recommends that you vote to accept the Plan. Each creditor must, however, review the Plan and the Amended Disclosure Statement carefully, including all Exhibits in their entirety, and determine whether to accept or reject the Plan based upon that creditor's independent judgment and evaluation. The description of the Plan in the Amended Disclosure Statement is in summary form and is qualified by reference to the actual terms and conditions of the Plan, which should be reviewed carefully before deciding to accept or reject the Plan. Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan. Other terms shall have the meaning ascribed to them in the Bankruptcy Code.

The information contained in the Amended Disclosure Statement has been provided by Debtor based upon its knowledge of available records, operations and

affairs, appraisals, and opinions of value. Except as otherwise expressed, the information provided by Debtor in the Amended Disclosure Statement has not been subject to audit or independent review.

Although great efforts have been made to be accurate, Debtor, its counsel and other professional advisors do not warrant the accuracy of the information contained herein.

The Amended Disclosure Statement has not yet been approved by the Bankruptcy Court as providing information deemed adequate to permit Debtor's creditors to make an informed judgment in exercising their right to vote for or against the Plan.

No representations concerning Debtor, including the value of its assets, or the aggregate dollar amount of claims which may be allowed are authorized other than as set forth in the Amended Disclosure Statement. Any representations, warranties or agreements made to secure acceptance or rejection of the Plan by Debtor's creditors that differ from those contained in the Amended Disclosure Statement should not be relied upon in voting on the Plan.

Debtor believes that the Plan provides the quickest recovery and will maximize the return to creditors on their Claims. **ACCORDINGLY, DEBTOR URGES ALL CREDITORS TO VOTE IN FAVOR OF THEIR PLAN.**

## II.   <u>SUMMARY OF THE PLAN</u>

The Plan specifies the way Claims and Interest are to be treated. Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not classified

for purposes of voting under the Plan, but the Plan provides for the treatment of

such Claims. The table below consists of a summary of the treatment of the

various Classes of Claims against Debtor, as well as of the Shareholder's Interest

in Debtor. To the extent that the terms of the Amended Disclosure Statement vary

from those of the Plan, the terms of the Plan will control.

| Description of Claim | Class Number (s) | Estimated Amount of Allowed Claims | Treatment and Estimated Recovery Under Plan |
|---|---|---|---|
| Holders of Allowed Administrative Expense Claims – Professional and US Trustee Fees | N/A | $2,097,853.97 | Unimpaired.<br><br>Estimated Recovery:100%<br><br>Holders of Allowed Administrative Expense Claims, including Professional Fees, US Trustee Quarterly Fees,  LUMA Energy and Oriental Bank and others,  as detailed in the **Exhibit D** hereto, shall be paid in full in the regular course of Debtor's business or as authorized by the Court on or before the Effective Date of the Plan (the "Effective Date"), from Debtor's available cash and the proceeds of the sale of Debtor's assets, as set forth in Class 1 below. |
| Holders of Allowed Priority Tax Claims | N/A | $981,612.31 | Unimpaired.<br><br>Estimated Recovery:  100%<br><br>Holders of Allowed Priority Tax Claims, Secured and Unsecured, as listed in **Exhibit E** hereto, shall be paid in full on or before the Effective Date of the Plan (the "Effective Date"), from the proceeds of the sale of Debtor's assets, as set forth in Class 1 below. |
| The Claims of Oriental Bank ("Oriental") (Proofs of Claim Number 127 and 130) | Class 1 | $15,959,929.47 | Impaired.<br><br>Estimated Recovery: $9,600,000<br><br>On or before the Effective Date, Debtor will sell its fee simple interest in Debtor's hotel and time share units, and the corresponding  parking |

| Description of Claim | Class Number (s) | Estimated Amount of Allowed Claims | Treatment and Estimated Recovery Under Plan |
|---|---|---|---|
| | | | spaces at the ESJ Towers Condominium, as well as other asset, including Debtor's inventory, furniture, hotel supplies, spare parts, office supplies, construction materials, computer equipment, software, as more fully described in **Section 1.2** of the Asset Purchase Agreement ("APA") for $13,500,000, attached as **Exhibit C** hereto.<br><br>From the proceeds of the Sale, Debtor will pay $9,600,000 to Oriental, 100% of Allowed Administrative Expense Claims and 100% of Allowed Priority Tax Claims, as indicated above, as well as payment to the remaining Classes, as set forth below.<br><br>Oriental's deficiency claim will be dealt with under Class 7 below.<br><br>If Debtor's assets are sold for more than $13,500,000 or if after all the payments to be made under the Plan there remain any undistributed funds, those excess funds will be paid to Oriental to reduce its deficiency claim. |
| The Claim of Acrecent Financial Corporation ("Acrecent") | Class 2 | $329,953.85 | Impaired<br><br>Estimated Recovery: 100%<br><br>Acrecent's Claim arising from the financing of vacation club time-shares will continue to be paid by the vacation club time-share interval owners, not requiring payments under the Plan.<br><br>Any deficiency as to this Claim will be dealt with under Class 7 below. |
| The Claim of Small Business Administration ("SBA") | Class 3 | $517,368.15 | Unimpaired<br><br>Estimated Recovery: 100%<br><br>SBA's loan secured by Debtor's otherwise unencumbered personal property will be paid in |

| Description of Claim | Class Number (s) | Estimated Amount of Allowed Claims | Treatment and Estimated Recovery Under Plan |
|---|---|---|---|
| | | | full on the Effective Date from the proceeds of the sale described in Class 1 above. |
| The Secured Claim of Popular Auto | Class 4 | $9,997.23 | Unimpaired<br><br>Estimated Recovery: 100%<br><br>The Secured Claim of Popular Auto, as per Proof of Claim No. 3 will be paid in full on the Effective Date from the proceeds of the sale described in Class 1 above. |
| The Claim of Colebrook Financial Company ("Colebrook") | Class 5 | $2,802,020.23 | Impaired<br><br>Colebrook's Claims, proof of claims number 86 and 87,as finally allowed, arising from the financing of vacation club time-share unit, secured by a third priority mortgage lien thereon, including those transferred to the 124 LLCs, object of adversary number 22-00070, and a first priority lien on the Colebrook Receivables and on the lockbox account in the name of Colebrook established exclusively to deposit the Colebrook Receivables, pursuant to Colebrook's intercreditor agreement with Oriental and Parliament dated May 4, 2018, as amended (the "Intercreditor Agreement"),  will continue to be paid by the vacation club time-shares interval owners, not requiring payments under the Plan or otherwise to be dealt with under the Intercreditor Agreement. It is expected that Colebrook will collect 100% of its Claims.<br><br>Any deficiency as to this Claim will be dealt with under Class 7 below. |
| The Second Claim of Acrecent | Class 6 | $200,955.69 | Unimpaired<br><br>Estimated Recovery: N/A |

| Description of Claim | Class Number (s) | Estimated Amount of Allowed Claims | Treatment and Estimated Recovery Under Plan |
|---|---|---|---|
| Financial Corporation ("Acrecent") | | | Acrecent's Second Claim arising from the financing of an IT and Telecommunications Systems, as per Proof of Claim Number 71, will be paid in full on the Effective Date from the proceeds of the sale described in Class 1 above. |
| Holders of Allowed General Unsecured Claims | Class 7 | $26,898,382.07 | Impaired.<br><br>Estimated Recovery:  2%<br><br>From the proceeds of the sale of Debtor's assets described in Class 1 above, Debtor will  carve out $750,000 to be distributed on the Effective Date pro-rata among the Holders of Allowed General Unsecured Claims, including the claims of BMF Capital, LLC, Green Capital Funding and High-Speed Capital, and any deficiency claim, of Parliament High Yield Fund, LLC, Acrecent, Colebrook, and Oriental Bank. In addition Debtor will establish a Litigation Trust for and on behalf of Holders of Allowed General Unsecured Claims ("Litigation Trust Beneficiaries") to which Debtor's Claims and Causes of Action, including those under Chapter 5 of the Bankruptcy Code, Sections 542, 544, 545, 458, 549, 550 and 553, subject to any liens thereon, accounts receivable, collection of money actions will be transferred to the Litigation Trust on behalf the Litigation Trust Beneficiaries, any net proceeds arising therefrom to be distributed pro rata to the members of Class 7.<br><br>If Debtor does not prevail on any pending Objection to Claims, those Allowed Claims will be included in this Class, and will receive, their pro-rata share of the $750,000 carve out referred to above. |
| Interest of Debtor's Shareholder Conexus Holdings | Class 8 | N/A | Impaired.<br><br>Estimated Recovery: N/A |

| Description of Claim | Class Number (s) | Estimated Amount of Allowed Claims | Treatment and Estimated Recovery Under Plan |
|---|---|---|---|
| Puerto Rico, LLC | | | Debtor's issued and outstanding shares will be cancelled upon the consummation of the Plan. |

For a more detailed description of the treatment of the foregoing Classes of Claims and the Interest see "Treatment of Claims and Interest under the Plan".

The Amended Disclosure Statement has been prepared by Debtor to provide creditors with adequate information so that they can make an informed judgment as to the Plan. Each creditor should read the Amended Disclosure Statement and the Plan in their entirety before voting on the Plan. No solicitation of votes on the Plan may be made except pursuant to the Amended Disclosure Statement and no person has been authorized to utilize any information concerning Debtor's Assets other than the information contained herein for purposes of solicitation.

## III.  INFORMATION ABOUT THE REORGANIZATION PROCESS

### 3.1  Purpose of a Disclosure Statement

This Amended Disclosure Statement includes background information about Debtor and identifies the classes into which creditors have been placed by the Plan. The Amended Disclosure Statement describes the proposed treatment of each of those classes if the Plan is confirmed. It also contains information concerning the prospects in the event of confirmation or, in the alternative, the prospects if confirmation is denied or the proposed Plan does not become effective.

Upon its approval by the Bankruptcy Court, the Amended Disclosure

Statement and its Exhibits will have been found to contain, in accordance with the provisions of the Bankruptcy Code, adequate information of a kind and in sufficient detail to enable a reasonable, hypothetical investor, typical of a holder of impaired claims or interests to make an informed judgment about the Plan. Approval of the Amended Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

## 3.2   Voting Procedure

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing, and causing the Ballot Forms accompanying the Amended Disclosure Statement as **Exhibits A-1, A-2, A-3, and A-4** to be returned to the following address:

**ESJ Towers, Inc.**
**c/o Charles A. Cuprill–Hernández, P.S.C., Law Offices**
**356 Fortaleza Street – Second Floor**
**San Juan, P.R.  00901**

The Ballots must be received **on or before 4:00 P.M. (Eastern Standard Time) on _____, 2023,** to be counted in the voting. Ballots received after this time will not be counted in the voting unless the Bankruptcy Court orders otherwise.

Debtor recommends a vote for "ACCEPTANCE" of the Plan.

## 3.3   Ballots

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or equity interests which are "impaired" under the terms and provisions of a plan are entitled to vote to accept or reject such plan.

Classes 1, 2, 5, 7, and 8 are impaired under the Plan. Members of impaired Classes, excepting Class 8, who is deemed not to have accepted the Plan pursuant to 11 U.S.C. §1126 (g), are entitled to vote and will be asked to vote for acceptance or rejection of the Plan. A party who holds claims in more than one impaired Class should complete a Ballot for each Class with respect to the applicable portion of the claim included in each Class. Classes 3, 4 and 6 are unimpaired under the Plan and not entitled to vote.

### 3.4   The Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, at _____ _.M., or as soon thereafter as the parties can be heard.  The Confirmation Hearing will be held before the Honorable Enrique S. Lamoutte Inclan, United States Bankruptcy Judge, 300 Recinto Sur Street, San Juan, Puerto Rico 00901, at the courtroom which the Bankruptcy Court may designate.

At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the holders of claims and the interest. The Bankruptcy Court will also receive and consider a Report of Plan Voting prepared by Debtor, summarizing the votes for acceptance or rejection of the Plan by parties entitled to vote.

The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjourned date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

At the Confirmation Hearing, with respect to the Plan, the Bankruptcy Court will (i) determine whether the requisite votes have been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and to the confirmation of the Plan, that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing, filed and served as required by the Bankruptcy Court pursuant to the order approving the Disclosure Statement, a copy of which is attached as **Exhibit B** hereto.

### 3.5   Acceptances Necessary to Confirm the Plan

The vote of each holder of an impaired claim is important, since at the Confirmation Hearing and as condition to the confirmation of the Plan on a consensual basis, the Bankruptcy Court must determine, among other things, whether each impaired Class has accepted the Plan. Under Section 1126 of the Bankruptcy Code, an impaired Class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of the Class members who cast ballots to accept or reject the Plan, accept the Plan. Further, unless there is acceptance of the Plan by all members of an impaired Class, the Bankruptcy Court must also determine that under the Plan, Class members will receive property of a value, as of the Effective Date, that is not less than the amount that such Class members would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### 3.6    Confirmation of the Plan without the Necessary Acceptances

If a Class or Classes of impaired Claims do not accept the Plan, Debtor will request confirmation of the Plan under the "cram down" provisions of Section 1129 (b) of the Bankruptcy Code, which permits confirmation, notwithstanding non-acceptance by one or more impaired classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to each non-accepting Class, as long as at least one class of impaired creditors votes to accept the Plan. Section 1129 (b) of the Bankruptcy Code requires among other things, that claimants must either receive the full value of their claims and if they receive less, that no Class with junior liquidation priority may receive anything. **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIMS AMOUNTS AND NUMBER OF CREDITORS WHO ACTUALLY VOTE. ANY BALLOT THAT IS VALIDLY EXECUTED THAT DOES NOT CLEARLY INDICATE REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE A VOTE FOR ACCEPTANCE OF THE PLAN.  THE VOTE OF EACH CREDITOR IS IMPORTANT.**

### IV.    DESCRIPTION OF THE DEBTOR AND EVENTS PRECEDING THE FILING OF DEBTOR'S CHAPTER 11 PETITION

### 4.1   HISTORICAL OVERVIEW AND EVENTS PRECEDING DEBTOR'S CHAPTER 11 FILING

Debtor was a profitable business prior to the effects of Hurricane María on the ESJ Towers Condominium (the "Condominium"), exacerbated by the closing of its operations thereat due to the regulations of the Government of Puerto Rico, because of the COVID-19 pandemic. Prior to the closing of its

operations, Debtor reported a $9.5MM and $1.4MM EBITDA for fiscal years 2018 and 2019, respectively.

After attempting to reach an agreement with Chubb Insurance Company of Puerto Rico ("Chubb"), prior to the Petition Date, Debtor on its behalf and that of the ESJ Towers Condominium Homeowners Association (the "HOA"), as then administrator thereof, assigned to Attenure Holdings Trust 1 ("Attenure") Debtor's and the HOA's supplemental insurance claim for $21,600,463.00 against Chubb for the insured losses resulting from the damages to the Condominium by Hurricane María. Attenure filed the corresponding complaint in the case styled Consejo de Titulares del Condominio ESJ Towers, ESJ Towers, Inc et als. v. Chubb Insurance Company of Puerto Rico, et als., with the Court of First Instance of Puerto Rico, Superior Section of Carolina, Case No. CA2019cv03427. The prosecution of this case has been delayed since the HOA has refused to ratify the assignment of its claim to Attenure, part of the HOA's ongoing disputes with Debtor and Attenure since Attenure requires the HOA's ratification of the assignment of its claim to continue prosecuting Case No. CA2019cv03427 before the Court of First Instance of Puerto Rico, Superior Section of Carolina (the "State Court).

On May 11, 2023, Debtor, Attenure and Oriental Bank filed a joint motion for the entry of an order approving the agreement for Attenure to

negotiate and litigate the insurance claim against Chubb and for ratification of the assignment documents to Attenure to do so, as amended, which is still pending.

In addition to the impact of the closing of the Condominium due to COVID-19, the lack of insurance supplemental funds to restore the Condominium, including the units in which Debtor has an interest and are necessary for its operations in their full capacity, the resulting loss in operating revenues, the closing of the swimming pool at the Condominium, coupled with the significant arrears in the payment of fees to Debtor by vacation club members and deeded holders of ownership interests in Debtor's units at the Condominium, made it impossible for Debtor to pay maintenance fees to the HOA without a set off, as well as Debtor's obligations to its secured and unsecured creditors, left Debtor with no alternative but to file its petition for reorganization under Chapter 11 of the Bankruptcy Code.

Including the $4.8M interim payment received from Chubb and special assessments, $13,078,822 were spent in improvements to the Condominium. To this effect the Trustee appointed for the HOA by the State Court reported thereto that Debtor spent not only the $4.8M received from Chubb as an initial payment, but an additional $969,463.50 for repairs after

Hurricane María, added to the $3.74M in improvements to the Condominium made prior thereto.

As stated in De Angel & Compañia, LLC's reports to the Puerto Rico Tourism Company of October 8 and November 6, 2020, as of Debtor's fiscal year ending on May 31, 2019, $10,177,301.00 had been invested in the Condominium.

Furthermore, Debtor was the unpaid manager and administrator of the Condominium for seven years until May 31, 2022, predicated on being reimbursed for the costs incurred thereby on behalf of the HOA.

## 4.2 Debtor's Post–Petition Endeavors

Since the filing of the Chapter 11 petition, Debtor has undertaken the following efforts directed to completing its reorganization for the benefit of its estate and its creditors.

Debtor sought the Bankruptcy Court's approval to retain Charles A. Cuprill, PSC Law Offices ("Cuprill") as bankruptcy counsel and CPA Luis R. Carrasquillo & Co. ("Carrasquillo") as its financial consultant for all matters pertaining to Debtor's reorganization.

The meeting of creditors under Section 341 of the Bankruptcy Code was held and closed on July 7, 2022.

On October 1, 2022, Global Cities Capital Associates, LLC ("Global

Cities"), presided by Clifton V. Onolfo ("Onolfo"), as purchaser and Around the World Holdings, LLC ("ATWH"), as seller, represented by decedent Keith St. Clair ("St. Clair") entered into an Equity Purchase Agreement (the "Equity Purchase Agreement") whereby ATWH purportedly sold to Global Cities as of September 30, 2022, the interests of Conexus, who in turn is the holder of Debtor's issued and outstanding shares. That transaction is being contested By ATWH who claims that Global Cities breached its obligations under the Equity Purchase Agreement and that the same should be set aside. On July 28, 2023, ATWH filed adversary number 23-00061 against Global Cities, Onolfo and Eric Decator. On September 15, 2023, ATWH requested the entry of default against the three defendants, which was entered on October 3, 2023. On October 23, 2023 ATWH moved the Court for the entry of default judgment against the three defendants, who on October 25, 2023 filed a response to the entry of their default, both of which are pending.

At Debtor's request on January 3, 2023, the Court entered an order barring Onolfo from Debtor's premises. Due to the contested matter arising from that order and Onolfo's failure to comply with the discovery served by Debtor on him, on May 3, 2023, Debtor filed a motion for an order to compel Onolfo to do so which is pending. Onolfo, St. Clair and St. Clair's estate do not have any current relationship with Debtor's operations or its financial affairs.

Debtor owns assets and intangible rights within the Condominium at 6165 Isla Verde Ave., Carolina, Puerto Rico, which was dedicated to the

horizontal property regime pursuant to Deed No. 8, before Notary Public José L. Nieves Dueño, dated February 21, 1955, specifically the ownership and operation of 126 fully owned residential units and one commercial unit, and 1,343 deeded timeshare intervals within 147 units.

Since December 18, 2022, Black Briar Advisor, LLC ("Black Briar"), through its principal Stephen L. Nalley, has been rendering managerial services to Debtor in Debtor's regular course of business representing Debtor's estate.

Black Briar's managerial role of Debtor's assets is necessary for Debtor's operations particularly at the present stage thereof where Debtor has negotiated the sale of all its assets through an APA with Fortaleza Equity Partners 2, LLC, as a stalking horse.

Black Briar has implemented a sophisticated Revenue and Yield Management strategy that has increased the occupancy and rate of Debtor's units by a significant margin. All of this was accomplished during the off season. Debtor is on pace to double the numbers from last year.

Black Briar has also streamlined the labor and reorganized Debtor's staff to maximize efficiency. Debtor's operations are well positioned under Black Briar's guidance moving forward to maximize the returns. Black Briar has also developed the only Cap-ex budget existing for the Condominium.

## V.    CLAIMS AGAINST DEBTOR AND ITS ASSETS

**5.1   Claims Against Debtor**

Claims against Debtor that are Allowed Claims, as defined in the Plan, will be entitled to distribution pursuant thereto.

The Plan provides that only holders of Allowed Claims, that is, holders of Claims not in dispute, not contingent, not unliquidated in amount and not subject to objection or estimation, are entitled to receive distribution thereunder. Until a claim becomes an Allowed Claim, distribution will not be made to the holder of such claim.

## 5.2   Objections to Claims

The amounts set forth as due to Holders of unclassified and classified claims are estimates only, based upon Debtor's Schedules and/or its belief as to amounts due to Holders of the various Claims. Debtor is including as **Exhibit D** hereto a Summary of Claims and Plan Payments as of September 25, 2023.

All objections to Claims must be filed and served by the Holders of such Claims on or before the Claims Objection Bar Date. If an objection has not been filed to a proof of Claim or a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim.

Any objections to Claims against Debtor are to be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes.

## VI.   <u>DESCRIPTION OF THE PLAN</u>

On or before the Effective Date, Debtor will sell for $13,500,000.00 its fee simple interest in its residential and commercial units at the Condominium, as well

as substantially all of its other assets, with the corresponding parking spaces, inventory, including but not limited to furniture, supplies, spare parts, office supplies, construction materials, computer equipment, software, as more fully described in Section 1.2 of the Asset Purchase Agreement ("APA") attached  as **Exhibit C** hereto.

From the proceeds of the Sale, Debtor will pay $9,600,000 to Oriental, 100% of Allowed Administrative Expense Claims, and 100% of Allowed Priority Tax Claims.

The following is a summary of the significant provisions of the Plan and is qualified in its entirety by said provisions. The Plan is being filed with the Bankruptcy Court simultaneously herewith. In the event and to the extent that the description of the Plan contained in the Amended Disclosure Statement is inconsistent with any provisions of the Plan, the provisions of the Plan shall control and take precedence. All creditors are urged to carefully read the Plan.

## 6.1   Unclassified Claims

In accordance with Section 1123 (a) (1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified in the Plan.  A description of the unclassified claims and the claims in each class, as well as the estimated principal amounts of each as of the Effective Date and their treatment, are set forth in the Plan and summarized in pages 6 to 10 above. Administrative Expense Claims are the ordinary and necessary costs of administering and operating during a Chapter 11 case.

## 6.2 Administrative Expense Claims

Except as otherwise agreed to by Debtor and the Holder of an Allowed Administrative Expense Claim, including Professional Fees, US Trustee Quarterly Fees, post-petition accounts payable, administrative expense claims of LUMA Energy, Oriental, and others. each such Holder shall be paid in full in the regular course of business or as authorized by the Court, on or before the Effective Date, from the proceeds of the sale of Debtor's assets.

## 6.3 Professional Fee Claims

The professionals retained in Debtor's Chapter 11 case have and will incur fees and expenses from the date of their appointment through the Effective Date of the Plan. It is impossible to predict the amount of the professional administrative expense fees that will be incurred through the Effective Date of the Plan. As of the filing of this Disclosure Statement, Debtor has paid Debtor's Chapter 11 counsel $464,231.88 and $99,360.15 to its financial consultant. At present, Debtor estimates that additional Allowed Professionals Fee Claims will amount to around $200,000.00 to $300,000.00 for unpaid professional services rendered and expenses incurred up to the Confirmation of the Plan to Court appointed professionals, including the professionals retained by the General Unsecured Creditors Committee. All amounts paid to professionals through the Confirmation Date, including interim fees and expenses already paid are subject to final Bankruptcy Court approval. Debtor reserves the right to contest the allowance of any professional fees.

## 6.4 Priority Tax Claims

Priority Tax Claims are Claims entitled to priority pursuant to Section 507 (a) (8) of the Bankruptcy Code. Such Priority Tax Claims consist of unpaid estimated due the Puerto Rico Treasury Department, Centro de Recaudaciones de Ingresos Municipales ("CRIM"), and Compañía de Turismo de Puerto Rico, as accrued prior to the Petition Date. The estimated Priority Tax Claims are listed in **Exhibit E** hereto.

Holders of Allowed Priority Tax Claims, Secured and Unsecured, shall be paid in full on or before the Effective Date of the Plan, from the proceeds of the sale of Debtor's assets.

These claims are estimated in $982,612.31.

## 6.5   Classes of Claims and Equity Interest

As of the Petition Date, Debtor had secured debts with Oriental Bank, Acrecent, SBA, Popular Auto and Colebrook. Debtor also has other non–priority unsecured debts, as more particularly described below and in pages 6 to 9 hereof.

The Classes of Claims and the Interest in Debtor set forth in the Plan are as follows:

- **Class 1** – The Claims of Oriental for $15,959,929.47, secured by a first priority mortgage lien on Debtor's hotel units and time share units, a first priority lien on Debtor's receivables, excepting the Colebrook Receivables, as indicated in Class 5 below, and a first priority lien on Debtor's other properties, assets, rights, interest, revenues, income and profits.


- **Class 2** - The Claim of Acrecent Financial Corporation for $329,953.85, arising from the financing of purchases of vacation club time-shares.
- **Class 3** - The Claim of Small Business Administration ("SBA") for

$517,368.15, secured by Debtor's unencumbered personal property.

- **Class 4** - The Claim of Popular Auto for $9,997.23, secured by a 2017 Ford 150 owned by Debtor.

- **Class 5** - The Claims of Colebrook Financial Company, Inc. for $2,802,020.23, arising from the financing by Colebrook of vacation club timeshares (the "Colebrook Receivables").

- **Class 6** - The Second Claim of Acrecent for $200,955.69, arising from the financing of an IT and Telecommunications System.

- **Class 7** - Holders of Allowed General Unsecured Claims for $26,898,382.07.

- **Class 8** - Interest of Debtor's Shareholder Conexus Holdings Puerto Rico, LLC.

### 6.6   Treatment of Claims and Interests

**A.**   **Class 1 – The Claims of Oriental (Proofs of Claim No. 127 and 130)**

1. Impairment and Voting – Class 1 is impaired under the Plan and entitled to vote to accept or reject the Plan.

2. Distribution –  On or before the Effective Date, Debtor will sell its fee simple interest in Debtor's  hotel units and in its commercial unit, and the corresponding parking spaces at the ESJ Towers Condominium, as well as other assets, including  Debtor's  inventory , furniture, hotel supplies, spare parts, office supplies, construction materials, computer equipment, software,  as more fully described in **Section 1.2** of the Assets Purchase Agreement ("APA") for $13,500,000, attached  as **Exhibit   C** hereto. From the proceeds of the Sale, Debtor will pay $9,600,000 to Oriental, 100% of Allowed Administrative Expense Claims and 100% of Allowed Priority Tax Claims, as indicated above, as well as payment to the remaining Classes, as set forth below.

Oriental's deficiency claim will be dealt with under Class 7 below.

If Debtor's assets are sold for more than $13,500,000 or if after all the payments to be made under the Plan there remain any undistributed funds, those excess funds will be paid to Oriental to reduce its deficiency.

**B.      Class 2 - The Claim of Acrecent Financial Corporation**

1. <u>Impairment and Voting</u> – Class 2 is unimpaired under the Plan and entitled to vote to accept or reject the Plan.

2. <u>Distribution</u> - Acrecent's Claim arising from the financing of purchases of vacation club time-shares will continue to be paid by the vacation club time-share interval owners, not requiring payments under the Plan.

Any deficiency as to this Claim will be dealt with under Class 7 below.

**C.      Class 3 – The Claim of Small Business Administration ("SBA")**

1. <u>Impairment and Voting</u> – Class 3 is unimpaired under the Plan and is not entitled to vote to accept or reject the Plan.

2. <u>Distribution</u> **–** SBA's loan secured by Debtor's otherwise unencumbered personal property will be paid in full on the Effective Date from the proceeds of the sale described in Class 1 above.

**D.      Class 4 – The Secured Claim of Popular Auto**

1. <u>Impairment and Voting</u> – Class 4 is unimpaired under the Plan and is not entitled to vote to accept or reject the Plan.

2. <u>Distribution</u> **–** The Secured Claim of Popular Auto, Proof of Claim No. 3,

will be paid in full on the Effective Date from the proceeds of the sale of Debtor's assets.

**E.     Class 5 – The Claims of Colebrook Financial Company, Inc**

1. <u>Impairment and Voting</u> – Class 5 is impaired under the Plan and entitled to vote to accept or reject the Plan.

   <u>Distribution</u> **–** Colebrook's Claims, proof of claims number 86 and 87,as finally allowed, arising from the financing of vacation club time-share unit, secured by a third priority mortgage lien thereon, including those transferred to the 124 LLCs, object of adversary number 22-00070, and a first priority lien on the Colebrook Receivables and on the lockbox account in the name of Colebrook established exclusively to deposit the Colebrook Receivables,     pursuant to Colebrook's intercreditor agreement with Oriental and Parliament dated May 4, 2018, as amended (the "Intercreditor Agreement"),  will continue to be paid by the vacation club time-shares interval owners, not requiring payments under the Plan or otherwise to be dealt with under the Intercreditor Agreement. It is expected that Colebrook will collect 100% of its Claims.

   Any deficiency to be dealt with under Class 7 below.

**F. Class 6 - The Second Claim of Acrecent Financial Corporation**

1. <u>Impairment and Voting</u> – Class 6 is unimpaired under the Plan and is not entitled to vote to accept or reject the Plan.

2. <u>Distribution</u> – Acrecent's Second Claim arising from the financing of an IT

and Telecommunications Systems, Proof of Claim Number 71, will be paid in full on the Effective Date from the proceeds of the sale of Debtor's assets.

## G. **Class 7 - Holders of Allowed General Unsecured Claims**

1. <u>Impairment and Voting</u> – Class 7 is impaired under the Plan and entitled to vote to accept or reject the Plan.

2. <u>Distribution</u> – From the proceeds of the sale of Debtor's assets described in Class 1 above, Debtor will   carve out $750,000 to be distributed on the Effective Date pro-rata among the Holders of Allowed General Unsecured Claims, including the claims of BMF Capital, LLC, Green Capital Funding and High-Speed Capital, and any deficiency claim, of Parliament High Yield Fund, LLC, Acrecent, Colebrook, and Oriental Bank. In addition Debtor will establish a Litigation Trust for and on behalf of Holders of Allowed General Unsecured Claims ("Litigation Trust Beneficiaries") to which Debtor's Claims and Causes of Action, including those under Chapter 5 of the Bankruptcy Code, Sections 542, 544, 545, 458, 549, 550 and 553, subject to any liens thereon, accounts receivable, collection of money actions will be transferred to the Litigation Trust on behalf the Litigation Trust Beneficiaries, any net proceeds arising therefrom to be distributed pro rata to the members of Class 7.

In the event that Debtor does not prevail on any pending Objection to Claims, those Allowed Claims will be included in this Class, and will receive, their pro-rata share of the $750,000 carve out referred to above.

### H. Class 8 – Interest of Debtor's Shareholder Conexus Holdings Puerto Rico, LLC

1. <u>Impairment and Voting</u> – Class 8 is impaired under the Plan but not entitled to vote to accept or reject the Plan, pursuant to 11 U.S.C. §1126(g).

2. <u>Distribution</u> – Debtor's issued, and outstanding shares will be cancelled upon the consummation of the Plan.

### 6.7   Means for Execution of the Plan

Except as otherwise provided in the Plan, Administrative Expense Claims will be paid in full in the regular course of Debtor's business or on the Effective Date of the Plan from the proceeds of the sale of Debtor's assets and the cash in Debtor's debtor-in-possession accounts.

### 6.8   Debtor's Post Confirmation Management

On the Effective Date Debtor will cease operations.

### 6.9   Executory Contracts and Unexpired Leases

All unexpired leases, executory contracts and other contracts set forth in **Exhibit G hereto,** which (i) have not expired by their own terms on or prior to the Confirmation Date, or (ii) that have not been assumed and assigned to the purchaser of Debtor's assets, as indicated in the APA prior to the Effective Date, shall be deemed rejected.

If the rejection of an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced already by a filed proof of claim,

shall be forever barred and shall not be enforceable against Debtor' Estate, or its properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before forty−five (45) days following the Confirmation Date. Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

## VII.  LIQUIDATION AND FINANCIAL ANALYSIS

### 7.1  Best Interest of Creditors and Comparison with Chapter 7 Liquidation

In the event Debtor's Chapter 11 case is converted to Chapter 7 of the Bankruptcy Code, a Chapter 7 Trustee will be appointed, most likely Debtor would have to cease its commercial activities, and the Trustee would liquidate Debtor's assets pursuant to the provisions of the Bankruptcy Code, Debtor's employees would be dismissed, and after attending to the immediate issues of securing Debtor's assets, the Chapter 7 Trustee would move to sell the same, without the active participation of Black Briar Advisors, LLC and Debtor's employees and officers, subject to the uncertainties and the atmosphere that such scenario creates, which will cause a devaluation of Debtor's assets as a going concern. Debtor's Liquidation Analysis as of August 31, 2023, is attached as **Exhibit H** hereto.

Certain assumptions and estimates have been made with respect to, among other things, the claims against Debtor and the nature and extent of Debtor's assets. The assumptions were utilized to prepare the Liquidation Analysis and are part thereof.

The Liquidation Analysis reveals that in the event of a liquidation of Debtor's assets there would be a substantial loss to its Estate, considering Chapter 7 costs of administration and the expected value of the Estate's assets in a liquidation scenario. The Liquidation Analysis reflects that in the event of liquidation under Chapter 7, CRIM will be paid in full, Oriental Bank's Loans and Chapter 7 administrative claimants will be partially paid, and all other creditors will not receive any dividends.

The Plan provides for the full payment of Chapter 11 Administrative Expense Claims, including professional fees and US Trustee's quarterly fees, post-petition accounts payable, and administrative expenses. Under the Plan, Holders of Priority Tax Claims will receive **100%** of their claims, as set forth therein. Moreover, under the Plan, the Holders of Allowed General Unsecured Claims will also receive at least **2%** of their claims.

Confirmation of the Plan will not only assure that Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed General Unsecured Claims will receive prompt and more significant dividends on their claims, but also that they will avoid the risks, costs and uncertainties related to a liquidation process, the lack of familiarity by a Trustee with Debtor's affairs and operations, and the removal of the persons who can best maximize Debtor's assets.

The Liquidation Analysis contains estimates and assumptions that, although developed and considered reasonable by Debtor, are inherently subject to significant economic uncertainties and contingencies beyond its control.

## 7.2   Feasibility of the Plan

### A.     Financial Projections

Debtor, with the assistance of Black Briar, its internal accountants, chief of staff and financial consultant, has prepared a detail of the funds that will be available after the sale of its assets and their distribution. (**Exhibit F**). No projections were prepared as the Plan consists of an orderly liquidation.

As **Exhibit I**, Debtor includes copies of its Audited Financial Statements as of May 31, 2021, and as **Exhibit J** a copy of its Monthly Operating Report for the month ended September 30, 2023. As **Exhibit K**, Debtor is including a Summary of its Operating Reports for September 30, 2023.

### B.     Funds and Assets Sufficient for Payments Under the Plan

As of the Petition Date, Debtor owned assets and had liabilities, as more particularly described in its Schedules and Statement of Financial Affairs, which together with Debtor's monthly operating reports are available for public inspection at the office of the Clerk of the Bankruptcy Court, during regular business hours.

### C.     Real Property

Debtor holds fee simple title in 126 residential units and one commercial unit, and 1,343 deeded timeshare intervals within 124 units. Debtor sustains owning the interest in the 124 LLC's, corresponding to 124 units at the Condominium with the same number of the unit, which were transferred by Debtor to the 124 LLC's on January 8, 2020. It is Debtor's position that such transfer consisted of a simulated sale, which must be set aside by the Bankruptcy Court and to that effect filed adversary case number 22-00055 against the 124 LLCs and Conexus,

which is pending.

### 7.3    Pending Litigation and Other Liabilities

At the time of the filing of the Chapter 11 petition, the following cases were

pending and were stayed by the provisions of Section 362(a) of the Bankruptcy

Code:

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| José Berríos Rivera V. ESJ Towers, Inc., BY2019CV01185 | Unjust Dismissal | Court of First Instance of Puerto Rico Bayamon Section | Stayed |
| Steven Vega V. ESJ Towers, Inc., SJ2022-0011118 | Collection Of Money | DACO San Juan Minillas Station San Juan, P.R. | Stayed |
| Luis Otero Cruz V. ESJ Towers, Inc., MAY2022-0002885 | Collection Of Money | DACO 50 Calle Nenadich Suite W.307 Mayaguez, P.R. | Stayed |
| Pablo Cierra Cruz V. ESJ Towers, Inc. | Collection Of Money | Court Of First Instance of Puerto Rico Carolina Section | Stayed |
| Edgar Frontera Troche V. ESJ Towers, Inc. | Unjust Dismissal | Department Of Labor and Human Resources 505, Luis Muñoz Rivera Ave. San Juan, P.R. | Stayed |
| Green Capital Funding, LLC; High Speed Capital, LLC V. ESJ Towers, Inc; ATWH; Keith St. Clair Index No. 500718/2022 | Collection Of Money | Supreme Court Of New York 60 Centre St. New York, Ny. | Concluded |
| Kalamata Capital Group, LLC V. ESJ Towers, Inc; Keith St. Clair Index No. 525285/2021 | Collection Of Money | Supreme Court Of New York 60 Centre St. New York, Ny. | Concluded |
| Ruth Lopez Et Als. V. ESJ Towers, | Declaratory | Court of First Instance | Stayed |

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Inc. Et Als. Ca2020cv02328 | Judgment | of Puerto Rico Carolina Section | |
| Consejo De Titulares Del Condominio ESJ Towers, ESJ Towers Inc. et als. V. Chubb Insurance Company of Puerto Rico Et Als. Ca2019cv03427 | Collection Of Money | Court of First Instance of Puerto Rico Carolina Section | Stayed |
| Bridge Security Services, Inc. V. ESJ Towers, Inc. et als. Sj2020cv04185 | Collection Of Money | Court Of First Instance of Puerto Rico<br><br>Su San Juan Section | Stayed |
| Leticia Hernandez V. ESJ Towers, Inc. Fa2017-1047 | Collection Of Money | Court Of First Instance of Puerto Rico Carolina Section | Stayed |
| Caribbean Concrete Solutions, LLC V. ESJ Towers, Inc. Ca2021cv02094 | Collection Of Money | Court Of First Instance of Puerto Rico Carolina Section | Concluded |
| Carrion Laffitte Casellas V. Consejo De Titulares ESJ Towers; ESJ Towers, Inc. Ca 2021cv02607 | Collection Of Money | Court of First Instance of Puerto Rico Carolina Section | Stayed |
| FIRST INSURANCE FUNDING UNA DIVISION DE LAKE FOREST BANK & TRUST COMPANY N.A. V. ESJ TOWERS INC. ET ALS. CA2021CV03109 | Collection Of Money | Court Of First Instance of Puerto Rico Carolina Section | Stayed |
| Chana Cohen Et Al. V. Consejo De Titulares ESJ et als.<br>C-San-2019-0004714; C-San-2019-0004859; C-San-2019-0005148; C-San-2019-0005217; C-San-2019-0005251<br>Daco Consolidate Cases | Collection Of Money | Daco<br><br>Minillas Station<br><br>San Juan, P.R. | Concluded |
| Gerardo Caballero V. ESJ Towers, Inc. Are-2021-000288 | Collection Of Money | Daco<br>Ave. Miramar, Suite 7, Carr 2<br>Arecibo, P.R. | On Appeal |
| Agm Group Engineering, Corp. V. Keith St. Clair, et als. Ca2021cv00856 | Collection Of Money | Court Of First Instance of Puerto Rico Carolina Section | Concluded |
| Elisa Belen Rios Santiago; Damian | Collection Of | Daco | Concluded |

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Marrero Rivera V. ESJ Towers, Inc. San-2019-0005718 | Money | P Minillas Station San Juan, P.R. | |
| Victor Ortega V. ESJ Towers, Inc. San-2018-0003392 | Collection Of Money | Daco Minillas Station San Juan, P.R. | Concluded |
| Sadigg V. St Clair, Inc et als. 20-01445 - Adc | Damages | United States District Court for the District of Puerto Rico | Pending |
| Lisa Marie Gibson Rodriguez V. Mare St. Clare Hotel Ca2020cv01223 | Damages | Court Of First Instance of Puerto Rico Carolina Section | Concluded |
| Ruth Lopez V. Ketih St. Clair as President of The HOA ESJ Towers. San-2021-0010363 | Violation Of Rules and Regulations | Daco Minillas Station San Juan, P.R. | Stayed |
| Kcs Enterprises, Inc. V. St. Clair Collection, LLC et als. Ca2022cv00706 | Collection Of Money | Court of First Instance of Puerto Rico Carolina Section | Stayed |

## VIII. <u>CHAPTER 11 PROCEEDINGS</u>

## 8.1 Determination of Claims

The Plan specifies procedures for estimating disputed claims and objecting to claims. Debtor may object to Claims within thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan. No payments will be made under the Plan on account of Disputed Claims until their allowance by the Bankruptcy Court. The Plan provides that Distributions on

Disputed Claims will be held in reserve until the Disputed Claims are allowed, at which time the reserves will be distributed, and the Claims will be treated according to the terms of the Plan.

Any Claims which (a) are not listed as Allowed Claims on Debtor's Schedules; (b) are not evidenced by a valid, a timely filed Proof of Claim; or (c) are not listed in the Plan or exhibits to the Plan as an Allowed Claim, shall not receive any distribution of cash or property under the Plan until they become Allowed Claims, and shall be disallowed and discharged if the Claims are not Allowed by Order of the Bankruptcy Court.

## IX.   <u>ALTERNATIVES TO THE PLAN</u>

If the Plan is not confirmed and consummated, the alternatives include (a) an alternate Plan where Debtor is able to find a buyer for the sale of all of its assets, with an orderly distribution of the funds, (b) Debtor's liquidation under Chapter 7 of the Bankruptcy Code (c) dismissal of the Case, and the possible foreclosure of Debtor's assets by Oriental Bank and Colebrook, or (d) the proposal of an alternative plan..

## A.   Liquidation Under Chapter 7

If no plan can be confirmed, the Case may be converted to Chapter 7 of the Bankruptcy Code, and as indicated above, a Trustee would be elected or appointed to liquidate Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.

As set forth in the Liquidation Analysis attached as **Exhibit H** hereto, other

than Oriental Bank, Colebrook and CRIM, and chapter 7 administrative claimants, no other creditors will receive any dividends under Chapter 7.

Thus, Debtor believes that Priority and General Unsecured Creditors would receive higher and prompt dividends under the Plan.

## B.     Dismissal of the Case

Dismissal of the Case would create substantial problems for all parties involved including, a run to the courthouse, which would result, in disregarding the orderly and structured equitable payments provided by the Plan under the provisions of the Bankruptcy Code. Therefore, dismissal of the Case is not a viable alternative for creditors.

## C.     Alternative Plan of Reorganization

If the Plan is not confirmed, Debtor could attempt to formulate a different plan. Debtor believes, however, that the Plan described herein will provide the greatest and most expeditious return to creditors.

## X.     TAX EFFECTS

Based on Debtor's net operating carry loss forwards, certain tax exemptions granted to Debtor by the Puerto Rico Treasury Department, and other provisions of the Internal Revenue Code of Puerto Rico of 2011, Debtor expects that the implementation of the Plan will not have any significant tax effects, if any.

## XI.     CONCLUSION

Debtor believes that the Plan is fair and reasonable and in the best interest

of its Estate and Creditors and offers the best possible recoveries for Creditors.

Debtor therefore urges Creditors to vote in favor of the Plan.


Signature on the next page…

Dated:  November 6, 2023.

**ESJ Towers, Inc.**

**By:**

*Stephen Nalley*

_____
**Stephen Nalley**
**President Black**
**Briar Advisors, LLC**