IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

ESJ TOWERS, INC.
d/b/a Mare St. Clair Hotel

    DEBTOR

CASE NO. 22-01676 (ESL)

CHAPTER 11

ORDER CONFIRMING THE SECOND AMENDED
CHAPTER 11 PLAN, AS SUPPLEMENTED

**WHEREAS**, on March 27, 2024, ESJ Towers, Inc., as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") pending before this court, filed its Second Amended Plan (the "Plan") (Docket No. 1691-1) under Chapter 11 of the Bankruptcy Code, as supplemented on May 9, 2024 (Docket No. 1792) (the "May 9 Supplement") and by consent on May 17, 2024 (Docket No. 1831) (the "May 17 Supplement" and collectively with the May 9 Supplement, the "Plan Supplements"). The Plan was served on Debtor's creditors on April 4, 2024 (Docket No. 1778). The Plan Supplements do not alter or affect the interests or rights of Debtor's creditors, and lead to the entry of this order. True and correct copies of the Plan and the Plan Supplements are attached hereto as Exhibit A;[1]

**WHEREAS**, on March 12, 2024, the court entered an order and notice (the "Confirmation Hearing Notice") scheduling the Confirmation Hearing for May 15, 2024, at 10:00 a.m. (EST) (Docket No. 1642), which was notified to all parties in interest (Docket No. 1647) and

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan. Any capitalized term not defined in the Plan or this Confirmation Order, but that is used in title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

was served by the Debtor by overnight mail on or about April 4, 2024, on all creditors and parties in interest entitled to receive notice of the Confirmation Hearing (Docket No. 1778).

**WHEREAS**, in connection with the Plan, the Debtor filed the Feasibility Report as to the Plan as supplemented on May 9, 2024 (the "Feasibility Report") (Docket No. 1793-1); and the Statement Regarding Compliance with Section 1129(a), dated May 9, 2024 (the "Confirmation Memorandum") (Docket No. 1794); and

**WHEREAS**, based upon the court's review and consideration of the Plan, the Plan Supplements and the documentation contained therein, the Feasibility Report, the Confirmation Memorandum, the docket of the Chapter 11 Case and all of the evidence proffered, adduced or presented at, and arguments of counsel made at, the Confirmation Hearing, and the entire record of this Chapter 11 Case; and after due deliberation thereon and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

(A) *Exclusive Jurisdiction; Venue; Core Proceeding*. This court has jurisdiction over the Chapter 11 Case pursuant to Sections 157 and 1334 of title 28 of the United States Code. Venue is proper before this court pursuant to Sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan, as supplemented through the Plan Supplements, is a core proceeding pursuant to Section 157(b)(2)(L) of title 28 of the United States Code, and this court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules for the District of Puerto Rico (the "Local Rules") and should be confirmed.

(B)      *Commencement*. On June 10, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the court. The Debtor

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

is operating its business and managing its affairs as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

(C)      *Judicial Notice*. The court takes judicial notice of the docket of the Chapter 11 Case, Case No. 22-01676-(ESL), captioned as <u>In re ESJ Towers, Inc. d/b/a Mare St. Clair Hotel,</u> maintained by the Clerk of the court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced or presented at the hearings held before the court during the pendency of the Chapter 11 Case.

(D)      *Notice of Chapter 11 Case and Confirmation*. Pursuant to the service of the Confirmation Hearing Notice, as well as the service of the Plan and the Plan Supplements, the court and the Debtor provided due notice of the Confirmation Hearing and the relevant deadlines attendant to the confirmation of the Plan. The Confirmation Hearing Notice constitutes adequate and sufficient notice pursuant to Section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3020 and 9006 and other applicable law and rules, and no other or further notice of the Confirmation Hearing, the Plan, and all the transactions contemplated under the Plan, as supplemented, including, without limitation, is or shall be required. All holders of Claims against and the Equity Interest in the Debtor and all other parties in interest were duly given notice of, and an opportunity to be heard in connection with the Plan and Plan Supplements pursuant to and in satisfaction of the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The Confirmation Hearing Notice, and the Plan were transmitted and served as set forth in the relevant certificates or affidavits of service filed with the court and are deemed to have been transmitted and served in compliance with the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

(E)     *Burden of Proof.* The Debtor has met the burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for the confirmation of the Plan.

(F)     *Classes Deemed to Have Accepted the Plan.* Under the Plan, the holders of Claims in Class 2 (Small Business Administration), Class 3 (Popular Auto) and Class 5 (Acrecent Financial Corporation) are not Impaired as that term is defined in Section 1124 of the Bankruptcy Code and are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Solicitation of the votes of holders of Claims in Classes 2, 3, and 5 is not required.

Under the Plan, holders of Claims in Class 1 (Oriental Bank), Class 4 (Colebrook Financial Company, Inc.), Class 6 (Holders of Allowed General Unsecured Claims), Class 7 (the Interest of Debtor's Shareholder Conexus Holdings Puerto Rico, LLC) and Class 8 (Parliament High Yield Fund, LLC) are Impaired as that term is defined in Section 1124 of the Bankruptcy Code. However, Oriental Bank, Colebrook Financial Company, Inc.[3], Holders of Allowed General Unsecured Claims, and Parliament High Yield Fund, LLC, have agreed to accept the Plan. Conexus Holdings Puerto Rico, LLC, is impaired under the Plan and is not entitled to vote to accept or reject the Plan, since the Debtor's issued and outstanding shares will be cancelled upon the consummation of such Plan. As provided for Section 1126(g) of the Bankruptcy Code, this Class is deemed not to have accepted the Plan.

(G) *Plan's Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).* The Plan complies with the applicable provisions of the Bankruptcy Code, and thereby satisfies Section 1129(a)(1) of the Bankruptcy Code:

---

[3] As to Colebrook Financial Company, Inc.'s acceptance of the Plan and the Plan Supplements, see Docket No. 1830.

(1)  *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))*. The Plan designates eight (8) Classes of Claims and the Equity Interest of Conexus Holdings Puerto Rico, LLC, which classes exclude Administrative Expense Claims and Priority Tax Claims, as they need not be classified. The Claims and the Equity Interest in each Class are substantially similar to other Claims and the Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and the Equity Interest created under the Plan and such classification scheme is reasonable and appropriate. The Plan therefore satisfies the requirements of Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)  *Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))*. The Plan, as supplemented, specifies that Class 2 (Small Business Administration), Class 3 (Popular Auto) and Class 5 (Acrecent Financial Corporation) are not Impaired under the Plan, and therefore the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

(3)  *Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))*. The Plan specifies that Class 1 (Oriental Bank), Class 4 (Colebrook Financial Company, Inc.), Class 6 (Holders of Allowed General Unsecured Claims), Class 7 (the Interest of Debtor's Shareholder Conexus Holdings Puerto Rico, LLC) and Class 8 (Parliament High Yield Fund, LLC) are Impaired and the respective treatment for each Class of Claims and the Equity Interest established under the Plan, including such Impaired Classes. Therefore, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

(4)  *No Discrimination (11 U.S.C. § 1123(a)(4))*. The Plan provides for equal treatment for each Claim or the Equity Interest of a particular Class. Therefore, the Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

(5)  *Adequate Means for Implementation of the Plan (11 U.S.C. § 1123(a)(5))*. The Plan provides adequate means for its implementation. Therefore, the Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

(6)  *No Issuance of Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))*. The Plan does not provide for the issuance of equity or other securities by the Debtor.

(7)  *Selection of Officers, Directors, or Trustee (11 U.S.C. § 1123(a)(7))*. Section 5.2 of the Plan provides that substantially all of the Debtor's operating assets will be transferred to the purchaser thereof (the "Purchaser"), and accordingly, the Debtor will not be selecting any officers or directors under the Plan. Therefore, Section 1123(a)(7) of the Bankruptcy Code is inapplicable to the Plan.

(8)  *Funding of Plan with Future Earnings (11 U.S.C. § 1123(a)(8))*. The Debtor is not an individual, and therefore Section 1123(a)(8) of the Bankruptcy Code is inapplicable to the Plan.

(9)  *Additional Provisions of the Plan (11 U.S.C. § 1123(b))*. The provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(H)  *Proper Debtor (11 U.S.C. § 1121(a))*. The Debtor is a proper debtor under Section 109 of the Bankruptcy Code, and a proper proponent of the Plan under Section 1121(a) of the Bankruptcy Code.

(I)  *Solicitation of the Plan (11 U.S.C. § 1125(b))*. Solicitation of the Plan was made pursuant to Section 1125(b) of the Bankruptcy Code after the approval of the Debtor's disclosure statement together therewith by serving copies thereof to the Debtor's creditors and parties in interest.

(J)  *Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))*. The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. Good faith is evident from the facts and records of the Chapter 11 Case

and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case. The Plan, together with the Plan Supplements, is the product of extensive negotiations conducted at arm's length among the Debtor, Oriental Bank, Parliament High Yield Fund, LLC, the Council of Homeowners of the ESJ Towers Condominium, Colebrook Financial Company, Inc., and the Debtor's Official Committee of Unsecured Creditors (the "Committee" or the "UCC"), the Purchaser, and each of their respective agents, counsels, and advisors. The Plan, together with the Plan Supplements, reflects the results of these negotiations and was proposed with the legitimate and proper purpose of maximizing recoveries for all legitimate stakeholders of the Debtor's Estate, and effectuating a consensual resolution of the Chapter 11 Case in a manner that serves the best interests of all creditors and parties in interest.

(K) *Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))*. Any payment made or to be made by the Debtor for services or for costs and expenses in, or in connection with, the Chapter 11 Case or the Plan have, to the extent required by the Bankruptcy Code, the Bankruptcy Rules, or the orders of the court, been approved by, or are subject to the approval of, the court as reasonable. Therefore, the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

(L) *Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))*. Section 5.2 of the Plan provides that substantially all of the Debtor's assets will be sold to the Purchaser upon approval of their sale thereto by the court. Accordingly, the Debtor will not be selecting any officers or directors under the Plan. Therefore, Section 1129(a)(5) of the Bankruptcy Code is inapplicable to the Plan.

(M) *No Rate Changes (11 U.S.C. § 1129(a)(6))*. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, the Plan satisfies Section 1129(a)(6) of the Bankruptcy Code.

(N) *Best Interests of Creditors (11 U.S.C. § 1129(a)(7))*. Under the Plan, each Impaired creditor either (i) accepted the Plan; or (ii) shall receive or retain value that is not less than the amount such Creditor would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code. Under the Plan, (i) Class 2 (Small Business Administration), Class 3 (Popular Auto) and Class 5 (Acrecent Financial Corporation) are not Impaired, (ii) Class 1 (Oriental Bank), Class 4 (Colebrook Financial Company, Inc.), Class 6 (Holders of Allowed General Unsecured Claims), Class 7 (the Interest of Debtor's Shareholder Conexus Holdings Puerto Rico, LLC), and Class 8 (Parliament High Yield Fund, LLC) are Impaired. Class 7 will not receive or retain any property on account of its Interest, the provisions of Section 1129(B)(ii) being applicable thereto since the Interest Holder would not receive or retain any property if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

(O) *Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8))*. Class 2 (Small Business Administration), Class 3 (Popular Auto) and Class 5 (Acrecent Financial Corporation) are not Impaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Accordingly, Section 1129(a)(8) is satisfied.

(P) *Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))*. The treatment of Administrative Expense Claims and Priority Tax Claims under the Plan satisfies the requirements of Section 1129(a)(9)(A) and (C) of the Bankruptcy Code.

(Q) *Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))*. Pursuant to the Plan, Class 1 (Oriental Bank), Class 4 (Colebrook Financial Company, Inc.), Class 6 (Holders of Allowed General Unsecured Claims), and Class 8 (Parliament High Yield Fund, LLC) are Impaired and have accepted the Plan. Therefore, the Plan satisfies Section 1129(a)(10) of the Bankruptcy Code.

(R) *Feasibility of Plan (11 U.S.C. § 1129(a)(11))*. The Plan, the Plan Supplements, the Confirmation Memorandum and the Feasibility Report, and all evidence proffered, adduced, or presented during the Confirmation Hearing, (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that confirmation of the Plan is not likely to be followed by the need for further liquidation or reorganization of the Debtor or its Estate. Therefore, the Plan satisfies Section 1129(a)(11) of the Bankruptcy Code.

(S) *Payment of Fees (11 U.S.C. § 1129(a)(12))*. Pursuant to the Plan, all fees payable under Section 1930 of title 28 of the United States Code that are due and payable as of the Effective Date shall be paid by the Debtor on the Effective Date. All such fees that become due and payable after the Effective Date shall be paid by the Debtor from the proceeds of the sale of its assets or from the accumulated cash in the Debtor's debtor-in-possession account, when such fees become due and payable. Therefore, the Plan satisfies Section 1129(a)(12) of the Bankruptcy Code.

(T) *Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))*. The Debtor has no retiree obligations, and therefore Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

(U) *Domestic Support Obligations (11 U.S.C. § 1129(a)(14))*. The Debtor is not required to pay any domestic support obligations, and therefore Section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan.

(V) *Individual Debtors (11 U.S.C. § 1129(a)(15))*. The Debtor is not an individual, and therefore Section 1129(a)(15) is inapplicable to the Plan.

(W) *Transfer of Property of the Plan (11 U.S.C. § 1129(a)(16))*. The Debtor is a moneyed business or commercial corporation, and therefore Section 1129(a)(16) of the Bankruptcy Code is inapplicable to transfers by the Debtor under the Plan. All other transfers of property under the Plan shall be made in accordance with this Confirmation Order and applicable non-bankruptcy law, including any laws governing the transfer of property by a corporation or a trust that is not a

moneyed, business, or commercial corporation or trust. Therefore, the Plan satisfies Section 1129(a)(16) of the Bankruptcy Code.

(X)  *Principal Purpose of the Plan (11 U.S.C. § 1129(d))*. The Plan has been proposed in good faith and for legitimate purposes, including the maximization of recoveries for all holders of Allowed Claims against the Debtor's Estate. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. Therefore, the Plan satisfies Section 1129(d) of the Bankruptcy Code.

(Y)  *Modifications to the Plan*. Any modifications to the Plan as specifically set forth in this Confirmation Order and on the record at the Confirmation Hearing constitute technical changes, and do not materially adversely affect or change the treatment of any Claims against or the Equity Interest in the Debtor. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require disclosure pursuant to Section 1125 of the Bankruptcy Code or solicitation of votes pursuant to Section 1126 of the Bankruptcy Code.

(Z)  *Sale of the Purchased Assets*

(1)  The Debtor has represented that the Asset Purchase Agreement relative to the sale of the Debtor's assets to be sold to the Successful Bidder, as such term is defined below*, will or has been validly executed, with full corporate authority by each party thereto, and without contravention of any legal, regulatory, corporate, or other requirement.

(AA)  *Executory Contracts and Unexpired Leases*. The Debtor has exercised its business judgment in determining whether to assume and assign or reject each of the Debtor's executory contracts and unexpired leases as set forth in Section 8.1 of the Plan. Each party to an executory contract or unexpired lease to be assumed by the Debtor and assigned to the Purchaser of the Debtor's assets has been provided with sufficient notice under the circumstances of such assumption. Each assumption and assignment, or rejection of an executory contract or unexpired

lease as provided under Section 8.1 of the Plan shall be legal, valid, and binding upon the Debtor and all non-Debtor parties to such executory contract or unexpired lease.

(BB)    *Releases and Injunctions.* Pursuant to Bankruptcy Rule 3016(c), the Plan describes in specific and conspicuous language all acts against the Debtor and the Debtor's estate to be enjoined. Neither the Plan nor the Plan Supplements are intended to release, nor do they release any party, other than the Debtor (including, but not limited to, any shareholder, director, member, affiliate, parent company, subsidiary, co-obligor or guarantor of the Debtor) from any contractual or legal obligation incurred thereby.

(CC)    *Continuation of Injunctions or Stays Until Effective Date.* All injunctions or stays provided for in the lead Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date of confirmation (the "Confirmation Date"), shall remain in full force and effect until the Effective Date.

(DD)    *Exemption from Transfer Taxes.* In accordance with Section 1146 (c) of the Bankruptcy Code:

(a)  the issuance, transfer, or exchange of any security under the Plan, as supplemented, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds of sale, cancellation of mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including but not limited to the sale of Debtor's assets to the successful bidder (the "Successful Bidder") of the auction relative thereto[4].

---

[4] See, Docket No. 1669, *Order Approving the Amended Bidding Procedures to Solicit Higher and Better Offers and Select the Successful Bidder, for the Sale of Debtor's Assets.*

(b)   the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Plan, as supplemented; and,

(c)   the making, delivery or recording of any deed, including the cancellation of mortgages or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, this Confirmation Order, the sale of Debtor's assets to the Successful Bidder of the auction relative thereto shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or governmental assessment. Consistent with the foregoing, officials of a governmental unit in which any instrument is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax.

(EE)      *Retention of Jurisdiction*. The court may properly retain jurisdiction over the matters set forth in Section 11.1 of the Plan and Section 1142 of the Bankruptcy Code.

## <u>DECREES</u>

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      *Confirmation.* The Plan, including the Plan Supplements and all other schedules, exhibits, supplements, and documents necessary to implement the Plan, are **APPROVED AND CONFIRMED** pursuant to Section 1129 of the Bankruptcy Code. The Plan Supplements, together with any and all other schedules, exhibits, supplements, and documents necessary to implement the Plan, are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order.

-12-

2.      *Compliance with Applicable Provisions of Bankruptcy Code.* The Plan complies with the applicable provisions of the Bankruptcy Code, including Sections 1122, 1123 and 1129 of the Bankruptcy Code. The Debtor has complied with the applicable provisions of the Bankruptcy Code, including Sections 1125 and 1126 of the Bankruptcy Code.

3.      *Modification and Amendment of Plan.* The modifications and amendments made to the Plan, as set forth in the amendments filed with the court and stated by the Debtor on the record at the Confirmation Hearing, as thereafter reduced to writing by the May 17 Supplement, meet the requirements of Section 1127 of the Bankruptcy Code. Such modifications and amendments do not materially and adversely change the treatment of any Claim against or the Equity Interest in the Debtor within the meaning of Bankruptcy Rule 3019, and therefore no additional disclosure or solicitation is required. As set forth in Section 12.4 of the Plan, subject to Section 1127(a) of the Bankruptcy Code, the Debtor may alter, amend, or modify the Plan at any time before or after the Confirmation Date and before substantial consummation.

4.      *Notice.* The Plan, the Plan Supplements, and all documents related to the foregoing, are appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and are in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

5.      *Objections.* All parties in interest have had a full and fair opportunity to litigate all issues raised by objections to the Plan, or which might have been raised, and such objections have been litigated. Any objection that has not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, is overruled on the merits.

6.      *Plan Supplements.* The documents contained in the supplements to the Plan and any amendments, modifications, and supplements thereto (to the extent consistent with the

terms of the Plan), and the execution, delivery, and performance thereof by the Debtor are authorized and approved.

7.     *Plan Classification Controlling*. The classifications of Claims against and the Equity Interest in the Debtor for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

8.     *Deadline to File Administrative Expense Claims and Final Fee Applications*. Except as otherwise provided in the Plan, pursuant to Section 2.2 of the Plan, all Administrative Expense Claims (other than Administrative Expense Claims that have been fully satisfied or Allowed on or before the Effective Date), including all applications for final allowance of Professional Claims, must be filed with the court and served on counsel for the Debtor within thirty (30) days of the entry of this order by the Clerk of the court (the "Administrative Expense Bar Date"). **THE FAILURE TO PROPERLY FILE AND SERVE AN ADMINISTRATIVE EXPENSE CLAIM OR APPLICATION FOR FINAL ALLOWANCE OF A PROFESSIONAL CLAIM ON OR BEFORE THE ADMINISTRATIVE EXPENSE CLAIM BAR DATE SHALL RESULT IN SUCH ADMINISTRATIVE EXPENSE CLAIM OR PROFESSIONAL CLAIM (AS APPLICABLE) BEING DEEMED FOREVER BARRED AND DISALLOWED AS OF THE EFFECTIVE DATE AUTOMATICALLY WITHOUT THE NEED FOR ANY OBJECTION FROM THE DEBTOR OR ANY OTHER PARTY IN INTEREST OR ANY ACTION BY THE COURT.** Anything in the Plan or this paragraph 8 of this Order to the contrary notwithstanding, (a) the Debtor may agree to extend the Administrative Expense Bar Date for the Committee's counsel and (b) the Administrative Expense Bar Date shall not apply to the work of the Committee's counsel on a contingent basis pursuant to the UCC's *Motion for Order Authorizing the Committee to Retain Jonathan A. Backman to Represent the Committee on a Secured Contingency Basis to Investigate and Pursue Chapter 5*

-14-

*and Related Claims*, as filed on May 9, 2024 (Docket No. 1785), as approved by the court via the Order entered on May 16, 2024 (Docket No. 1824).

9.  *Objection to and Settlement of Administrative Expense Claims*. As of the Effective Date, the Debtor shall have the exclusive right to object to any Administrative Expense Claim, including Professional Claims, on or before the Administrative Expense Claims Objection Deadline. Unless the Debtor objects to a timely-filed and properly served Administrative Expense Claim, such Claim shall be deemed Allowed in the amount requested. In the event that the Debtor objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, if that fails, the court shall determine whether such Claim should be Allowed and, if so, in what amount. As soon as reasonably practicable following the seventh (7th) Business Day after the occurrence of the Administrative Expense Claims Objection Deadline, a hearing will be held to consider all timely-filed and properly served applications for final allowance of Professionals Claims. The Debtor may settle Administrative Expense Claims (other than Professional Claims) in the ordinary course of business without further court approval.

10.  *Sale of the Debtor's Assets to the Successful Bidder*. The sale of the Debtor's Assets to the Successful Bidder at the Auction thereof held on May 8, 2024, pursuant to the Bidding Procedures approved by the court, and subsequent transfer thereof to the Successful Bidder, the assumption by the Debtor of the contracts assumed during the Bankruptcy Case (the "Assumed Contracts"), the assignment by the Debtor to the Successful Bidder of the Assumed Contracts, and the rejection by the Debtor of any executory contract that does not constitute Assumed Contracts is hereby approved pursuant to Sections 363, 365, 1123(a)(5), 1123(b)(4), and 1146(a) of the Bankruptcy Code, and the Debtor and the Successful Bidder are hereby authorized and directed to take any and all necessary actions to consummate the sale of all of the Debtor's assets to be sold to the Successful Bidder.

11. *Free and Clear of Liens, Claims, Encumbrances and Other Interests*. The transfer of the Debtor's assets to the Successful Bidder shall be effectuated free and clear of all liens, Claims, encumbrances, rights, remedies, restrictions, interests, liabilities, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including, without limitation, all rights or claims based on any successor or transferee liability *(and, for the avoidance of doubt, other than with respect to any easements that run with the real property included among the Debtor's assets to be purchased by the Successful Bidder)*. Except as expressly provided in this Confirmation Order, the Debtor's assets to be sold to the Successful Bidder shall be transferred thereto free and clear of all liens, claims, encumbrances, and other interests in, on, or with respect to the Debtor's assets to be sold to the Successful Bidder including, without limitation, interests, obligations, rights, encumbrances, pledges, liens (including, without limitation, mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), mortgages, deeds of trust, security interests, claims (including, any "Claim" as defined in Section 101(5) of the Bankruptcy Code), liabilities, debt obligations, losses, penalties, leases, charges, offsets, contracts, options, rights of first refusal, rights of first offer, rights of first sale, rights of notice, proxies, voting trusts or agreements, transfer restrictions under any agreement, conditional sale or other title retention agreements, judgments, hypothecations, demands, licenses, sublicenses, assignments, indentures, loan agreements, instruments, debts, rights of recovery, guaranties, contractual commitments, restrictions, setoff, recoupment, subrogation, employee benefit agreements and obligations, collective bargaining agreements and obligations, claims based on reimbursement, contribution, indemnity, exoneration, products liability, tortious conduct, property damage, personal injury, alter-ego, environmental liability, or taxes, and claims or liabilities otherwise arising under doctrines of successor liability, de facto merger, or substantial continuity, in each case, of any kind or nature in, against, or with

respect to the Debtor's assets to be sold to the successful Bidder or the Debtor, or accrued prior to and through the Closing, whether direct or indirect, absolute or contingent, choate or inchoate, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, statute, equity, or otherwise, and whether arising prior to, on, or after the Petition Date (collectively, "Interests"). As provided in the Plan and Plan Supplements, secured creditors will retain their liens over the proceeds from the sale of the Debtor's assets.

12.     None of the Successful Bidder, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) is a mere continuation of the Debtor or its estate or is holding itself out to the public as a continuation of the Debtor. There is no continuity or common identity between the Debtor and any of Successful Bidder, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable), and there is no continuity of enterprise between the Debtor and any of the Successful Bidder, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable). None of the Successful Bidder, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) is a successor to the Debtor or its estate, and none of the transactions contemplated by the Sale, and the assumption and assignment of the Assumed Contracts, amount to a consolidation, merger, or de facto merger of the Successful Bidder, its affiliates, or any of their respective members, partners, shareholders, principals, employees, agents, representatives, and advisors (as applicable) with or into the Debtor. For the avoidance of doubt, any and all employees of the Debtor or any affiliates of the Debtor (including, without limitation, any and all employees who supply direct or indirect services to the Debtor by way of their employment with any affiliate of the Debtor), and any and all related obligations, wages, payments, and benefits associated with

any and all such employees, shall not be and hereby are not assumed in any respect whatsoever by the Successful Bidder, nor do any such obligations, wages, payments, or benefits constitute any future obligation of the Successful Bidder. Any and all employees hired by the Successful Bidder in connection with the operation of the Debtor's assets to be sold by the Successful Bidder shall be and hereby are deemed to be new hires of the Successful Bidder, and no such employee shall have any right to claim from or against the Successful Bidder or any person or entity associated therewith any obligations, wages, payments, in any way related to the period prior to the Closing of the sale.

13. *Binding Effect*. Upon the Effective Date, the Plan shall be, pursuant to 11 U.S.C. § 1141(a), binding on, and shall inure to the benefit of, the Debtor's Estate and its respective successors and assigns. The rights, benefits and obligations of any entity named or referenced in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity, including any holder of a Claim against the Debtor, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has voted to accept the Plan.

14. *Releases and Injunctions*. For the reasons set forth in this court's findings in this Confirmation Order and at the Confirmation Hearing, the release and injunction provisions against the Debtor and the Debtor's estate are appropriate. Neither the Plan nor the Plan Supplements are intended to release, nor they release, any party other than the Debtor (including, but not limited to, any shareholder, director, member, affiliate, parent company, subsidiary, co-obligor or guarantor of the Debtor) from any contractual or legal obligation incurred thereby.

15. *Payment of Fees*. As set forth in Section 12.2 of the Plan, all fees payable pursuant to 28 U.S.C. § 1930 that are due and payable as of the Effective Date shall be paid by the

Debtor on the Effective Date. All such fees that become due and payable after the Effective Date shall be paid when such fees become due and payable.

16. *Substantial Consummation*. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

17. *Exemption From Transfer Taxes*. Pursuant to Section 1146(a) of the Bankruptcy Code, (i) the sale of the Debtor's assets to be sold to the Successful Bidder, (ii) the issuance, transfer or exchange of any security under, in furtherance of, or in connection with, the Plan; and/or (iii) the assignment or surrender of any lease or sublease, or the delivery of any instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation any deed, bill of sale, assignment, mortgage, deed of trust or similar document executed in connection therewith (including real and personal property), shall not be subject to any stamp tax, real estate transfer tax, recording tax, sales tax, personal property tax, mortgage tax, use tax, or other similar tax, or any Uniform Commercial Code filing or recording fee or similar or other government assessment. The Confirmation Order shall direct the appropriate state or local government officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Each and every federal, state and local government agency or department are directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

18. *General Authorizations*. The Debtor and its officers, employees, agents or attorneys are authorized and empowered pursuant to Sections 105 and 1142(b) of the Bankruptcy Code and any applicable state law, without further order of the court, to execute, deliver, file or record such contracts, instruments, releases, consents, certificates, resolutions, programs and other

agreements and documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement, consummate and further evidence the terms and conditions of the Plan, including, without limitation, implementing all transactions, settlements and compromises as set forth in or contemplated by Plan, the Confirmation Order, amending and restating the Debtor's constituent documents in accordance with the terms of the Plan, as supplemented, and performing all obligations under the Plan, as supplemented, and the Asset Purchase Agreement relative to the sale of the Debtor's assets to be sold to the Successful Bidder.

19. *Governmental Approvals Not Required, and Other Governmental Matters*. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto. Any agreement(s) (the "Governmental Purchased Assets Agreements") executed before the entry of this Confirmation Order among the Purchaser and the government for the Commonwealth of Puerto Rico (including, directly or indirectly, with any governmental agency, department, corporation, division, portion, part, agent or representative, including on behalf of or in connection with the Executive Branch or any other part of the government for the Commonwealth of Puerto Rico) pertaining to the Debtor's assets to be sold to the Successful Bidder shall be in full force and effect and shall be deemed "so ordered" by operation of this Order of the court.

20. This Confirmation Order shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Debtor's assets to be sold to the Successful Bidder. Each and every federal, state, territorial, and local governmental agency or department or office (including the government for the Commonwealth of Puerto Rico) is directed to accept this Confirmation Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan, as supplemented, and this Confirmation Order (including pertaining to the Governmental Purchased Assets Agreements).

21. *Applicable Non-Bankruptcy Law*. Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, as supplemented, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

22. *Governing Law*. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit, schedule or supplement hereto provides otherwise, the rights, duties and obligations arising under the Plan and the Plan Supplements, and any agreements, documents and instruments executed in connection with the Plan, as supplemented, (except as otherwise expressly provided in such agreements, documents and instruments) shall be governed by, and construed and enforced in accordance with, the laws of Puerto Rico, without giving effect to the principles of conflict of laws of such jurisdiction.

23. *Severability*. In the event that prior to the entry of the Confirmation Order, any term or provision of the Plan and/or the Plan Supplements is held by the court to be invalid, void or unenforceable, the court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or

unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan, as supplemented, will remain in full force and effect and in no way will be affected, impaired, or invalidated by such holding, alteration, or interpretation. This Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as supplemented, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

24. *Conflicts Between Confirmation Order and the Plan.* To the extent of any inconsistency between the provisions of the Plan and/or the Plan Supplements, and this Confirmation Order exists, the terms and conditions contained in this Confirmation Order shall govern, and the terms of the Plan and/or the Plan Supplements, shall be deemed to have been amended in a manner consistent with this Confirmation Order. References to the Plan and/or the Plan Supplements, and the provisions thereof shall be references to the Plan and/or the Plan Supplements, and such provisions as amended by this Confirmation Order. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this court.

25. *References to Provisions of the Plan, as supplemented.* The failure specifically to include or reference any particular provision of the Plan and/or the Plan Supplements in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the court that the Plan and the Plan Supplements be confirmed in its entirety, as amended by this Confirmation Order.

26. *Final Order.* This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

27. *Reversal*. In the event that any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan, as supplemented, or this Confirmation Order prior to the Debtor receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the Effective Date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and the Plan Supplements, and all related documents or any amendments or modifications thereto.

28. *Notice of Entry of Confirmation Order and Effective Date*. Pursuant to Bankruptcy Rules 2002(f), 2002(k) and 3020(c), as soon as reasonably practicably after entry of this Confirmation Order, the Debtor shall publish and serve on all known parties in interest and holders of Claims against and the Equity Interest in the Debtor, notice of the entry of this Confirmation Order and all relevant deadlines and dates under the Plan and the Plan Supplements, including, without limitation, the deadline for filing Administrative Expense Claims and Rejection Damages Claims, in substantially the same form as attached hereto as <u>Exhibit B</u>. The notice described herein is adequate and sufficient under the circumstances of the Chapter 11 Case and no other or further notice is necessary.

29. *No Stay of Confirmation Order*. Pursuant to Bankruptcy Rule 3020(e), this Confirmation Order shall not be stayed and shall be effective upon entry on the docket of the court.

30. *Waiver of Appeal Rights*. For the avoidance of doubt, each of the Debtor, Oriental Bank, Parliament High Yield Fund, LLC, Colebrook Financial Company, Inc., Council of Homeowners of the ESJ Towers Condominium, and the Official Committee of Unsecured

Creditors shall be deemed to have waived –and hereby do waive – any and all rights of such parties to challenge, appeal, seek to appeal, seek reconsideration, or otherwise seek to modify or alter this Confirmation Order, as it is being entered by the court with the express consent of each of the foregoing parties.

31. *Retention of Jurisdiction*. The court (and, in the event the court is unable or unwilling, the United States District Court for the District of Puerto Rico) will retain jurisdiction over the matters set forth in Section 11.1 of the Plan and Section 1142 of the Bankruptcy Code.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of May 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge

-24-